## McGuire v. Winslow and others.

(*Circuit Court, N. D. New York.* January 27, 1886.)

1. CUSTOMS—SEIZURE—LIABILITY TO FORFEITURE.
    The question whether property which has been seized by the proper revenue officers of the government is liable to forfeiture under the customs laws of the United States, can only be adjudicated in the mode and by the procedure prescribed by the laws of congress.

2. SAME—DUTY OF OFFICER.
    It is the duty of the officer to make the seizure if he has probable cause to believe the property to be forfeited.

3. SAME—JURISDICTION—PROPER ACTION.
    The exclusive jurisdiction to determine whether property has become forfeited to the United States is vested in the federal courts, and is to be exercised by proceedings *in rem*, and it depends upon the final decree of such courts whether the seizure is to be deemed rightful or tortious.

4. SAME—PROCEEDINGS IN REM PRECEDE ACTION IN TRESPASS FOR FORFEITURE.
    When a seizure is made for a supposed forfeiture under a law of the United States, no action of trespass lies in any common-law tribunal until a final decree is pronounced upon the proceeding *in rem* to enforce such forfeiture.

5. SAME — REVISED STATUTES, §§ 3074-3079, INCLUSIVE — SALES PURSUANT THERETO.
    A sale of seized property pursuant to sections 3074-3079, inclusive, of the Revised Statutes, is, in legal effect and operation, equivalent to a sale under a judicial decree of condemnation.

Action of Trover.

*Martin I. Townsend,* for defendants.

*Thomas H. Breen,* for plaintiff.

WALLACE, J.    This action was commenced in the supreme court of this state, and removed to this court upon the petition of the defendants.    It is an action of trover, brought to recover the value of a horse alleged to have been wrongfully taken by the defendants from the possession of the plaintiff, and converted to their own use.    The defense is that the horse was imported into the United States from the dominion of Canada, in violation of law, and was subject to seizure and forfeiture to the United States; and that all the acts done in the premises by the defendants were done by them in the seizure and sale of the horse as officers of the government; the defendant Winslow as a special agent of the treasury department, and the defendant Warren as collector of the port of Cape Vincent.

Upon the trial it appeared that the horse was brought into the district of the defendant Warren, and was seized by him, with the co-operation of the defendant Winslow, upon the assumption that the plaintiff had entered the horse for importation by means of a false invoice, with intent to defraud the United States.    The collector, being of opinion that the value of the property seized did not exceed $500, caused an appraisement to be made pursuant to section 3074, Rev. St.    Upon the appraisal the property was found to be of less value than $500, and thereupon he caused publication of notice to be made in manner and form, and for the period of time, prescribed by

section 3075. No person filed any claim to the property seized, pursuant to section 3076. The collector thereupon, after the proper time had expired, gave notice of the sale of the property seized, and sold the same at public auction according to the requirements of section 3077, and thereafter he deposited the proceeds of the sale in the treasury of the United States. All the proceedings of the defendants were regular, but evidence was given for the plaintiff tending to show that the horse was not entered by means of a false invoice, and that the purchase price paid for the horse in Canada was truly stated in the invoice. By consent of counsel for the defendants the question of fact was left to the jury whether the property had in fact been entered by means of a false invoice; and the question of law whether the plaintiff could recover if the jury found against the defendants upon the issue of fact was reserved for further consideration. The jury found for the plaintiff, and the question now is whether the defendants are liable.

No precedent has been cited for such an action, and there is no principle upon which it can be sustained. The question whether property which has been seized by the proper revenue officers of the government is liable to forfeiture under the customs laws of the United States can only be adjudicated in the mode and by the procedure prescribed by the laws of congress. By legislation which embraces the whole subject of seizure and forfeiture the exclusive jurisdiction to determine whether property has become forfeited to the United States is vested in the federal courts, and is to be exercised by proceedings *in rem;* and, as was held in the early case of *Slocum* v. *Mayberry,* 2 Wheat. 1, it depends upon the final decree of such courts whether the seizure is to be deemed rightful or tortious. In *Gelston* v. *Hoyt,* 3 Wheat. 246, it was decided that if a sentence of condemnation be definitely pronounced by the proper court of the United States, it is conclusive that a forfeiture is incurred; if a sentence of acquittal, it is equally conclusive against the forfeiture; that in either case the question cannot again be litigated in any common-law forum; that where a seizure is made for a supposed forfeiture under a law of the United States, no action of trespass lies in any common-law tribunal until a final decree is pronounced upon the proceeding *in rem* to enforce such forfeiture; that if an action be brought against the seizing officer for the supposed trespass while the suit for the forfeiture is pending, the pendency of the suit may be pleaded in abatement; that if an action be brought after a decree of condemnation, or after an acquittal, with a certificate of a reasonable cause of seizure, the decree may be pleaded as a bar to the action; and that it is only after an acquittal without such a certificate that the officer is without justification for the seizure, and the seizure is to be deemed a tortious act.

An action of trespass or trover cannot be maintained against the proper officer of the revenue for his act in making a seizure when he

has probable cause to believe the property is forfeited to the United States, if he does not abandon the seizure by a failure to take the necessary steps to procure a judicial condemnation, or in cases where a formal decree of condemnation is unnecessary, unless he fails to comply with the requirements of the statute by selling the property and turning over the proceeds to the treasury. It is his duty to make seizure if he has probable cause to believe the property to be forfeited. *Averill* v. *Smith*, 17 Wall. 82, 91. If made with probable cause, he is entitled to the benefit of a *bona fide* possession, and is responsible only for ordinary diligence in the preservation of the property, and in bringing it in for adjudication. *Shattuck* v. *Maley*, 1 Wash. C. C. 245; *Burke* v. *Trevitt*, 1 Mason, 96.

Prior to the act of April 2, 1844, it was the duty of the collector, or other principal officer of the revenue, in making a seizure, to cause a suit for forfeiture to be commenced without delay; and the suit was tried in the district court, as now, by a proceeding *in rem*, in which all parties interested in the property could intervene, and have their day in court, and test the question whether the property was properly liable to seizure or not. But by that act it was provided that in cases of seizure of property which, in the opinion of the collector, was of the value of $100 or less, he was to cause an appraisement to be made by two sworn appraisers, or by two competent and disinterested citizens; and if, by the appraisal, the value was found not to exceed that sum, he was to publish a notice once a week for three successive weeks in some newspaper of the county or place where the seizure was made, describing the article seized, and stating the time, place, and cause of seizure, and requiring any person claiming such article to appear, and file his claim, with such seizing officer, to the article within 90 days. The act also authorized any person claiming the property so seized, at any time within the 90 days, to file his claim with the collector, stating his interest in the article, upon his depositing with the collector a bond to the United States conditioned that, in case of the condemnation of the article so claimed, the obligors would pay all the costs and expenses of the proceedings to obtain such condemnation. The act made it the duty of the collector to transmit the claim and bond, with a duplicate list and description of the articles seized and claimed, to the United States attorney for the district, and made it the duty of the district attorney to proceed for a condemnation of the property in the ordinary mode prescribed by law. It was further provided that if no such claim should be filed, or bond given, the collector should give not less than 20 days' notice of the sale of the property seized, by publication, in the manner before mentioned, and at the time and place specified in such notice should sell the property at public auction, and should deposit the proceeds, after deducting the actual expenses of the seizure, publication, and sale, in the treasury of the United States. It was also provided that within one year after such sale any person claiming to be inter-

ested in the property sold might apply to the secretary of the treasury for a remission of the forfeiture and a restoration of the proceeds of such sale, and the same might be granted by the secretary upon satisfactory proof that the applicant, at the time of the seizure and sale, was absent out of the United States, or did not know of the seizure, and that such forfeiture was incurred without willful negligence or any intention of fraud on the part of the owner of the property; and that if no application for a remission or restoration should be made within the year, the secretary of the treasury should cause the proceeds of such sale to be distributed as in the case of property condemned and sold in pursuance of a decree of a competent court. The manifest purpose of that act was to save to the government the expense of proceedings for a judicial condemnation of property forfeited, in cases where the property was of inconsiderable value. By subsequent amendment, a change was made in the law, shortening the length of time of the publication of notice of sale, and for the filing of the claim and bond, shortening the period during which the secretary of the treasury might entertain an application for a remission, and making the proceeding applicable to all cases in which, in the opinion of the collector or other principal officer of the revenue making the seizure, the value of the property did not exceed $500. Act July 18, 1866. As thus changed, the act of 1844 is now incorporated into the Revised Statutes as sections 3074–3079, inclusive.

It is entirely clear that a sale of seized property pursuant to these sections is, in legal effect and operation, equivalent to a sale under a judicial decree of condemnation. These provisions of law were adopted originally as a substitute for the ordinary judicial proceeding in a specified class of seizures. They contemplate a form and mode of proceeding having the ordinary characteristics of a judicial proceeding *in rem*, which is usually initiated by a seizure of the *res*, and in which personal notice to persons interested in the property is commonly dispensed with. They afford a reasonable notice by publication of the commencement of the proceeding, and of the cause of seizure, and preserve to the persons interested in the property a reasonable opportunity to assert their claim, and have their rights judicially determined. The provisions which authorize an application to the secretary of the treasury also evince the legislative intent that a sale made pursuant to these sections shall conclude the rights of persons interested in the property as effectually as they would be concluded under a judicial decree. While an opportunity is given, after the sale, to apply for a remission and restoration of the proceeds, the applicant can only be heard upon satisfactory proof that he did not know, and was excusable for not knowing, of the seizure and sale of the property. The concluding provision, directing the secretary of the treasury to distribute the proceeds of the sale "in the same manner as if the property had been condemned and sold in pursuance of a decree of a competent court," also indicates the legislative intent

that the sale is to be treated in all its incidents as a sale under a judicial decree.

For these reasons it must be held that the question whether the property in suit was properly subject to forfeiture could only be tried in the mode prescribed by the sections of the Revised Statutes referred to. It could not be determined in this suit, and a verdict should have been directed for the defendants.