E. W. SCARBOROUGH, as Director of State Beverage Department, v. JOE NEWSOME.

7 So. (2nd) 321                                    En Banc
March 27, 1942

J. Turner Butler and A. H. Rothstein, for petitioner.
F. B. Harrell and C. A. Avriett, for respondent.

CHAPMAN, J.:

On November 20, 1941, the Honorable Hal W. Adams, Circuit Judge, entered an order restraining Honorable E. W. Scarborough, Director of the State Beverage Department, from selling or disposing of a 1935 Model Chevrolet Pickup Truck, property of Joe

Newsome, a farmer residing in Hamilton County, Florida. The truck was seized and a forfeiture thereof to the State of Florida asserted because the same was used by Joe Newsome contrary to the several provisions of Chapter 19301, Acts of 1939, Laws of Florida.

The truck by the Director was valued at a sum less than $1,000.00 under the provisions of Section 13 of Chapter 19301, *supra,* and caused the same to be advertised for sale under and in accordance with Sub-section (b) of Section 13, *supra.* The pertinent provision is Sub-section (c) of Section 13 of Chapter 19301, viz:

"(c) Execution of Bond by Claimant.—Any person claiming the property so seized, within the time specified in the notice, may file with the Director a claim, stating his interest in the property seized, and may execute a bond to the State of Florida in the penal sum of $500.00, with a surety company licensed to do business in the State of Florida as surety, conditioned that, in case of forfeiture of the property seized, the obligors shall pay all the costs and expenses of the proceedings to obtain such forfeiture, including a reasonable attorneys' fee: and upon the delivery of such bond to the Director, the proceeding to enforce such forfeiture shall continue as in the case where the property seized is of value in excess of $1,000.00."

If the respondent had elected to post a bond under the provisions of Sub-section (c) *supra,* then a judicial proceeding would have followed as set out and detailed by Section 14 of the Act.

The pertinent provision of Section 14 of Chapter 19301, *supra,* necessary for a decision of the case at bar are viz:

"Section 14. Property Valued In Excess of $1,000.00. —In all cases of seizure of any property as being subject to forfeiture under the provisions of the Beverage Act and having a value, in the opinion of the Director in excess of $1,000.00, the Director shall cause to be prepared in duplicate a list containing a particular description of the property seized. Thereafter, he shall promptly cause to be instituted in the Circuit Court in the county in which such property was seized a proceeding to declare a forfeiture of such property, which proceeding shall be brought in the name of the State of Florida and shall be in the nature of a proceeding in rem against the property so seized. Such proceedings shall be commenced by the filing of a sworn petition which shall allege such seizure, the date and place thereof, a reasonably full description of the property seized, the ultimate facts surrounding such seizure which would authorize a seizure and forfeiture under the Beverage Act, the names, if known, of the persons found in possession of such seized property, if any, and their addresses, if known, and the names and addresses of the owners of or any persons having or claiming any interest in such seized property, if known, and shall conclude with a prayer that the court order that the property seized, or any part thereof, be sold, destroyed and/or delivered to the State Beverage Department for use in the enforcement of this Act."

It was the view of, and the lower court held, that the several provisions of Sub-section (c) of Section 13, *supra,* requiring and making it mandatory on the respondent, Joe Newsome, to execute and have approved by the Beverage Director a bond containing the various conditions appearing therein were unfair,

unjust, arbitrary, discriminatory and violative of constitutional guaranties and therefore void and unenforceable, and, accordingly by an appropriate order, restrained the Beverage Director from enforcing said provisions. It follows that the restraining order here challenged must be affirmed if Sub-section (c) *supra* is unconstitutional, otherwise the restraining order will be reversed.

Chapter 20830, Laws of Florida, Acts of 1941, levied an excise tax on all malt and alcoholic beverages, to be paid by the manufacturer and distributor, viz: seven cents per gallon on malt beverages containing more than one per cent of alcohol by weight; on other beverages containing between one per cent and fourteen per cent of alcohol, thirty cents per gallon; on beverages containing between fourteen and forty-eight per cent alcohol, $1.20 per gallon; while beverages containing more than forty-eight per cent of alcohol must be taxed at $2.40 per gallon. The collection of these excise taxes is placed with the State Beverage Department.

Chapter 19301, Laws of Florida, Acts of 1939, grants to the Beverage Department of Florida broad powers for the purpose of collecting these several excise taxes. Chapter 19301 makes it unlawful: (a) to deliver beverages without payment of the excise tax; (b) for the possession of a still, or enumerated portions thereof adaptable to the manufacture of intoxicating liquors; (c) for the possession of fermented liquids capable of distillation or manufacture into intoxicating beverages; (d) the forfeiture of stills, and designated portions thereof, and fermented liquors to the State of Florida, is provided; (e) seizure of vehicles, inclusive of automobiles, and horse, used in

the transportation of stills, or designated portions thereof, fermented liquors, or intoxicating beverages, and the same can or may be seized and forfeited by the Director of the Beverage Department if the tax imposed is not paid; (f) the Director of the Beverage Department is authorized to seize beverages brought into Florida without payment of the excise tax; (g) provisions for the seizure of other properties are provided for and heavy penalties are imposed for a violation thereof.

These many provisions can or may be considered as the legal machinery authorized and used by the Director of the State Beverage Department for the enforcement and collection of excise taxes on all malt, alcoholic beverages or liquors. The Chevrolet Truck was seized by the Beverage Director under the terms of the Act on the theory that it was being used, or had been used, by Joe Newsome, the respondent, in the transportation of alcoholic beverages upon which excise taxes by operation of law were due to the State of Florida and had not by him been paid and an effort was being made to evade the payment.

It is here contended that Sub-section (c) of Section 13 of Chapter 19301, *supra,* being a portion of the legal machinery enacted by the Legislature for the collection of the excise taxes designated and the enforcement thereof by the terms of the Act placed with the Director of the Beverage Department, is unconstitutional and void.

This Court in construing an Act, will consider its history, the evil to be corrected, the intention of the law making body, the subject regulated, and the object to be obtained. See Curry v. Lehman, 55 Fla. 847, 47 So. 18; State v. Rose, 93 Fla. 1018, 114 So.

373; Douglass, Inc. v. McRainey, 102 Fla. 1141, 137 So. 157; Realty Bond & Share Co. v. Englar, 104 Fla. 329, 143 So. 152.

It is contended that Sub-Section (c) of Section 13 of Chapter 19301, *supra,* requiring the respondent to make bond for a return of the truck seized by the Director deprives him of the equal protection of the law contrary to Sections 4 and 12 of the Declaration of Rights to the State Constitution and as a legal corollary of the Fourteenth Amendment to the Federal Constitution providing that no State shall deprive any person of life, liberty or property without due process of law.

The 14th amendment was never designed for the purpose of interfering with the police power of a state in prescribing regulations to promote the health, peace, morals, education, good order of the people, but to enact legislation to develop its resources, and add to its wealth and prosperity. See Barbier v. Connolly, 113 U. S. 27. The State may enact laws wherever the public interest demands it, and a large discretion is vested in the Legislature to determine the public interest and measures for its protection. See Kidd v. Pearson, 128 U. S. 1.

The case of McGuire v. Winslow, 26 Fed. 304, involved the seizure and sale of a horse by an agent of the Treasury Department of the Federal Government when engaged in the enforcement of a certain revenue measure. The Act under which the horse was seized provided for an appraisement of the animal by the officer and two competent disinterested citizens, and if the value thereof was found not to exceed $100.00, then the animal so seized for the non-payment of taxes would be advertised and sold pursuant to the

provisions of the Act. The Act provided that any person claiming ownership of the property seized could file with the officer a claim bond payable to the United States Government. It was the agent's duty to then transmit the claim and bond to the Federal Court for a condemnation proceeding. The question presented was whether or not the animal seized under the Customs Law by an agent of the Treasury of the Federal Government could summarily be sold according to the provisions of the Act without a violation of the fundamental rights of the owner. The court, in sustaining the several provisions of the Act under which the horse was seized, in part said (text 26 Fed. 307):

". . . The manifest purpose of that act was to save to the government the expense of proceedings for a judicial condemnation of property forfeited, in cases where the property was of inconsiderable value. . .

"It is entirely clear that a sale of seized property pursuant to these sections is, in legal effect and operation, equivalent to a sale under a judicial decree of condemnation. These provisions of law were adopted originally as a substitute for the ordinary judicial proceeding in a special class of seizures. They contemplate a form and mode of proceeding having the ordinary characteristics of a judicial proceeding *in rem*, which is usually initiated by a seizure of the *res*, and in which personal notice to persons interested in the property is commonly dispensed with. They afford a reasonable notice by publication of the commencement of the proceeding, and of the cause of seizure, and preserve to the persons interested in the property a reasonable opportunity to assert their

claim, and have their rights judicially determined
. . . ."

In case In Re: C. I. T. Corporation, 28 Fed. (2nd)
50, involved an automobile driven by one Temple,
arrested by the customs officers and at the time the
driver had twelve cases of Canadian Ale. The Tariff
Act of 1922 provided for a summary forfeiture of
automobiles, after notice, and allowing the claimant
to file a bond therefor. The provisions of the Tariff
Act provided for a seizure by the Collector of property
used in violation of the Act and upon appraisal if the
value did not exceed $1,000.00, the Collector should
proceed to publish notice and summarily forfeit the
property, unless claim was made to the property and
a cost bond filed. It was contended that the Act
authorizing the seizure and sale for the violation of
the Custom Laws was arbitrary, unreasonable and
void, but the Court disposed of this contention in
words viz:

"These provisions for statutory or summary for-
feiture do not seem to have been held invalid. They
have never ben questioned in reported cases. They
have been in daily use the country over since 1844,
as a necessary and orderly aid in the collection of
revenue as a bar to the importation of prohibited
articles. It cannot be assumed that Congress intends
to abandon this procedure, or that it has been over-
looked; for it was not only re-enacted in the Tariff
Act of 1922, but the value of the property subject to
be thus forfeited was raised."

Acts of Congress permit an owner to have his
property returned to him upon giving a bond where
the same has been seized in an effort to collect taxes,
and the Acts have been sustained. See Milkint v.

Morganthau, 92 Fed. (2nd) 266; Sub-section (c) of Section 3722, Title 26, Vol. 26, page 353, U. S. C. A.

Counsel for appellee cite 12 Am. Jur., par. 677, p. 358. We have considered this citation in light of the contention made. Sections 13 and 14 of Chapter 19301, Acts of 1939, *supra,* are drafted so as to preserve the constitutional rights of the owner. Notice and a right to be heard are provided for in these Sections. It is the refusal of the respondent to make the bond provided for by Sub-section (c) of Section 13 that presents the issue for a decision. The respondent has not been deprived of a hearing, nor his property forfeited, but by giving a bond as required by Sub-section (c) of Section 13, the disputed issues can be settled in the Circuit Court. The respondent contends that the truck was not used in the transportation of liquor on which a tax had not been paid. This issue can or may be presented to the circuit court and heard in an orderly procedure under Section 14, when the bond provided for in Sub-section (c) of Section 13 is delivered to the Director.

Counsel for respondent cites State v. Rose, 33 Del. 168, 132 Atl. 864, 45 A. L. R. 85. It will be observed that the statute before the Court in State v. Rose, *supra,* did not contain the notice and hearing provisions like Sections 13 and 14 of Chapter 19301. Wolfe owned the car and a third party, without his knowledge, used the same illegally in the transportation of liquor. The statute made no provision for a notice to Wolfe or other individuals similarly situated.

Likewise, 30 Am. Jur. par. 569, is cited by respondent. It must be kept in mind that a judgment of forfeiture does not appear in this record. The respondent can or may contest this issue in a forum

provided for by Section 14 and by giving the bond as required by Sub-section (c) of Section 13 of Chapter 19301. These two Sections provide for not only notice, but the privilege of being heard. The courts have sustained similar statutes providing for a sale of property after notice, without a judicial proceeding where the amount involved was small. See Pilcher v. Faircloth, 135 Ala. 311, 33 So. 545; United States v. Chicelli, 10 F. Supp. 900.

In the case of Goldsmith-Grant Co. v. United States, 254 U. S. 505, 65 L. Ed. 376, 41 Sup. Ct. 189, one Hudson car valued at the sum of $800.00 was seized while being used to remove fifty-eight gallons of whiskey without payment of the tax imposed by Congress. The car was owned by the Grant Company, seller of the car. It was in the possession of Thompson and Lamb when seized while transporting liquor, but the Grant Company retained title thereto. The statute under which the car was seized provided (Act of Congress passed July 13, 1866, c. 184, 14 Stat. 98, Sec. 3450 Rev. Stats. (now 26 U.S.C.A. Int. Rev. Code, Sec. 3321) :

" 'Whenever any goods or commodities for or in respect whereof any tax is or shall be imposed, . . . are removed, or are deposited or concealed in any place, with intent to defraud the United States of such tax, or any part thereof, all such goods and commodities, . . . shall be forfeited; and in every such case all the casks, vessels, cases, or other packages whatsoever, containing, or which shall have contained, such goods or commodities, respectively, and every vessel, boat, cart, carriage, or other conveyance whatsoever, and all horses or other animals, and all things used in the removal or for the deposit.

or concealment thereof, respectively, shall be forfeited.' "

In sustaining the seizure and the Act the Court, in part, said (text 254 U. S. 510, 512, 513) :

". . . Congress must have taken into account the necessities of the Government, its revenues and policies, and was faced with the necessity of making provision against their violation or evasion and the ways and means of violation or evasion. In breaches of revenue provisions some forms of property are facilities, and therefore it may be said, that Congress interposes the care and responsibility of their owners in aid of the prohibitions of the law and its punitive provisions, by ascribing to the property a certain personality, a power of complicity and guilt in the wrong. . . .

". . . It is said that a Pullman sleeper can be forfeited if a bottle of illicit liquor be taken upon it by a passenger, and that an ocean steamer can be condemned to confiscation if a package of like liquor be innocently received and transported by it. Whether the indicated possibilities under the law are justified we are not called upon to consider. It has been in existence since 1866, and has not yet received such amplitude of application. When such application shall be made it will be time enough to pronounce upon it. And we also reserve opinion as to whether the section can be extended to property stolen from the owner or otherwise taken from him without his privity or consent. . . .

". . . It is the illegal use that is the material consideration, it is that which works the forfeiture, the guilt or innocence of its owner being accidental. If we should regard simply the adaptability of a particu-

lar form of property to an illegal purpose, we should have to ascribe facility to an automobile as an aid to the violation of the law. It is a 'thing' that can be used in the removal of 'goods and commodities' and the law is explicit in its condemnation of such things."

The challenged restraining order was issued by the learned chancellor below on an erroneous conception of the law. The petition for an interlocutory writ of certiorari is granted and the restraining order is hereby quashed.

It is so ordered.

BROWN, C. J., WHITFIELD, TERRELL, BUFORD, and THOMAS, JJ., concur.

ADAMS, J., dissents.