### ABBOTT, et ux v. BURLEIGH HOUSE, Inc., et al.
Nos. 70-14179, 70-14180, 70-16198.

Circuit Court, Dade County.

November 16, 1970.

Alan B. Oppenheimer and Michael R. Fishman of Lester & Oppenheimer, Miami, for plaintiffs.

Darrey A. Davis of McCarthy, Steel, Hector & Davis, Miami, for defendants.

FRANCIS X. KNUCK, Circuit Judge.

*Final judgment:* The three above styled cases were consolidated, and pursuant to pre-trial conference, they were tried before the court as consolidated class actions. The court heard the testimony, reviewed the evidentiary exhibits, and had the benefit of exhaustive briefs, including proposed final judgments, setting forth the positions of the respective parties.

These actions were instituted by the plaintiffs, Dalton Abbott and Martha Abbott, his wife, purportedly representing themselves and all other persons contracting to purchase apartment units in the Burleigh House Condominium. The litigation was engendered by a group of prospective purchasers designating themselves as the "action committee" for the Burleigh House Buyers Association, whose membership consists of the following contract purchasers — Fred Green, Maurice Brill, Annette Friedman, Dalton Abbott, William Schussel, Irving Fishman, and Paul Sladon. (Defendants' exhibit O).

At the time of trial, approximately a third of all purchasers of apartment units had closed and taken title to their apartments, by executing a deed ratifying, confirming and approving the provisions of the agreement to purchase, the management agreement, and the community facilities lease, which are the subject matters of plaintiffs' claims.

The defendants sued by plaintiffs are Burleigh House, Inc., a Florida corporation, the developer and owner of the condominium

property and seller of the apartment units; Burleigh House Condominium, Inc., a Florida non-profit corporation, the "condominium association" whose membership is to consist of owners of the apartment units; Herbert Buchwald, as trustee, the owner and record title holder of the recreation facilities described in the condominium documents and which recreation facilities are leased to the condominium association for use by the apartment owners under the terms of the community facilities lease; and Burleigh House Management Corporation, a Florida corporation, the manager of the condominium property and recreation facilities under the management agreement with the condominium association. (Plaintiffs' composite exhibits 1 and 2).

The Burleigh House Condominium, created under and pursuant to the provisions of chapter 711, Florida Statutes, consists of an 18-story, X-shaped building, containing 360 apartment units, 11 shop units, and 19 recreation units, on lands located at 71st Street and the Atlantic Ocean in Miami Beach. (Plaintiffs' composite exhibit 1).

This consolidated litigation consists of fourteen counts asserting multiple claims and defenses arising from contracts for the sale and purchase of apartment units in the Burleigh House Condominium.

### Count One, Case No. 70-14179

By this count, plaintiffs demand judgment cancelling the management agreement made on December 15, 1969, by and between Burleigh House Condominium, Inc. (the condominium association) and Burleigh House Management Corporation, and filed for record December 23, 1969, in official records book 6694, at page 592 of the public records of Dade County, upon grounds of fraudulent misrepresentations made by the developer, Burleigh House, Inc.

Plaintiffs allege they agreed to purchase apartment units in the Burleigh House Condominium under a contract which was both oral and written. The written contract sued upon provides that —

> 3. The apartment involved in this agreement is a portion of lands, improvements and property which have been or prior to the time of closing will be submitted to the condominium form of ownership. The nature of the rights and undertakings of the Buyer in acquiring and owning such apartment are controlled and will be subject to a Declaration of Condominium, Articles of Incorporation of the Condominium Association, By-Laws of the Association, Rules and Regulations of the Association, a Management Agreement regarding the operation and management of the condominium and a Community Facility Lease as to the recreation facilities. * * *

12. This agreement and those documents specifically made a part hereof constitute the entire agreement between the Buyer and Seller and may not be modified or amended except in writing signed by the Buyer and Seller. Each acknowledges that there are no agreements, stipulations, representations, promises or understandings whatsoever in any way touching the subject matter of this agreement which are not expressly contained herein.

Plaintiffs allege that at and before execution of the written contract, the developer, Burleigh House, Inc., represented that the foregoing provisions of the agreement to purchase relating to the management agreement were not binding and were merely surplusage, and that the condominium association would have full management of the condominium. Plaintiffs further allege that the defendant knew such oral representations were untrue and that defendant's oral misrepresentations constituted fraud; that the management agreement was not then in existence and plaintiffs relied upon the oral misrepresentations made by defendant.

Plaintiffs do not seek rescission or cancellation of the agreement to purchase for alleged oral misrepresentations. They seek enforcement of oral representations which are directly contrary to the provisions of the written contract by cancellation of the management agreement. It has been held that a prior oral representation which is inconsistent with a written contract affords no basis for relief. Greenwald v. Food Fair Stores Corporation, Fla. App. 1958, 100 So.2d 200.

On the factual question whether the alleged oral representations were made, the testimony is conflicting. However, the testimony on behalf of defendant is more credible and convincing. Annette Friedman, a member of the action committee, testified that no such representations were made to her and she had full knowledge that the purchasers of apartment units would be subject to a management agreement. The testimony of other members of the action committee produced by plaintiffs was vague and indefinite as to the substance of the oral representations and their interpretation of the meaning thereof in respect to the management agreement.

The court finds for the defendants and against plaintiffs on the issues involved in this count. The preponderance of the evidence establishes that purchasers of apartment units were not misled by any oral misrepresentations concerning the management agreement, nor was the developer guilty of any fraudulent conduct with respect to the management agreement. Full disclosure was made by the developer, and the management agreement is binding upon and enforceable against purchasers of apartment units in the Burleigh House Condominium and the condominium association.

## Count Two, Case No. 70-14179

Plaintiffs seek a declaratory judgment declaring and adjudicating that the management agreement is illegal and void as being contrary to the provisions of the Florida Condominium Act, and contrary to public policy. Defendants contend for the validity of the management agreement.

The management agreement made by and between the condominium association and Burleigh House Management Corporation (part of plaintiffs' composite exhibits 1 and 2) employs the management corporation to serve as manager to operate and maintain the condominium and recreation facilities for and on behalf of the condominium association. For such services the manager is to receive six percent of all receipts and income of the condominium association. The agreement is for the initial term of approximately five years, renewable for additional five year terms, subject to cancellation upon six months' notice by either party.

This claim necessarily involves the construction of controlling provisions of chapter 711, Florida Statutes, known as the Condominium Act. It is a fundamental rule in statutory construction that the intention of the legislature in the enactment of a statute shall be ascertained and effectuated. The legislature's intent is the essence and vital force of a statutory enactment. In re Ginsberg's Estate, Fla. 1951, 50 So.2d 539; Getzen v. Sumter County, 89 Fla. 45, 103 So. 104. Where statutory language is plain and unambiguous, the statute must be given its obvious meaning and effect. Rules of statutory construction are the means, resting in logic, by which courts seek to determine legislative intent when that intent is not so plain and obvious as to be conclusive. McDonald v. Roland, Fla. 1953, 65 So.2d 12; Scarborough v. Newsome, 150 Fla. 220, 7 So.2d 321.

§711.03(2), Florida Statutes, provides, under definitions as used in the Condominium Act, that — "Association means the entity responsible for the operation of a condominium." And §711.12(1) provides — "The operation of the condominium shall be by the association . . .".

These provisions of the Condominium Act are relied upon as the basis for the invalidity of the management agreement. However, the legislature enacted chapter 70-273, Laws of Florida, as an amendment to the Condominium Act, wherein it is provided that —

Condominium Associations may contract for maintenance, management or operation of condominium property and no such contracts shall be construed as being invalid by reason of the Condominium Association's

delegation or assignment of its rights, duties, privileges or responsibilities as set forth in the condominium act or the declaration of condominium or otherwise and all such contracts entered into prior to the effective date of this act are declared valid.

Moreover the legislature also enacted chapter 70-274, Laws of Florida, amending §711.13, Florida Statutes, by adding the following —

From and after the effective date of this act [January 1, 1971] any initial or original contract, by which is meant the contract first entered into by the Condominium Association, for maintenance, management or operation of condominium property shall be subject to cancellation at any time subsequent to the time any individual unit owners assume control of their association by vote of no less than 75% of said individual unit owners.

Thus, it appears from these clarifying statutory amendments that it is the legislative intent to recognize the validity and propriety of management agreements made by condominium associations to provide for the maintenance, management or operation of the condominium property by a management company.

Accordingly, the court finds for the defendants and against the plaintiffs on the issues presented under this count, and declares the management agreement valid and not contrary to the provisions of the Condominium Act nor contrary to public policy.

## Count Three, Case No. 70-14179

By this count, plaintiffs demand judgment reforming said management agreement by deleting all provisions thereof to the effect that acceptance by a buyer of a condominium unit of a deed from the defendant, Burleigh House, Inc., constitutes ratification and adoption of said management agreement and substituting therefor a provision to the effect that said management agreement shall be inoperative and of no effect unless and until it is ratified and adopted by the condominium association by means of a vote of all the members, being all of the purchasers of the shop and apartment units from the defendant, Burleigh House, Inc.

Plaintiffs have failed to demonstrate any basis of law or fact upon which the relief sought could be granted. The principles enunciated in Wechsler v. Goldman, Fla. App. 1968, 214 So.2d 741, and Fountainview Association, Inc. No. 4 v. Bell, Fla. App. 1967, 203 So.2d 657, affirmed, Fla. 1968, 214 So.2d 609, militate against the position taken by plaintiffs for reformation of the management agreement.

Accordingly, the court finds for defendants and against plaintiffs on the issues involved in this count.

Case No. 70-14180, consisting of six counts, is brought as a class action against the developer, Burleigh House, Inc., and asserts claims seeking reformation of the agreements to purchase apartment units by reduction of the purchase price; specific performance of the purchase agreements, as reformed, and damages; and for injunction enjoining the developer from closing the sale and purchase of any apartment units.

### Count One, Case No. 70-14180

Plaintiffs allege that purchasers contracted to purchase apartment units upon representations that the apartments would be as shown on the floor plans contained in the sales brochures (plaintiffs' exhibit 3), but that the sizes and dimensions of the apartments as built are substantially smaller than represented to purchasers at the time of signing the purchase agreements. Plaintiffs claim the developer willfully and with fraudulent intent altered the plans of construction to reduce the sizes of the apartments. Plantiffs demand judgment modifying and reforming the purchase contracts to reduce the balance of the purchase price to be paid by purchasers at the closings.

The evidence shows that the developer caused preliminary architectural plans to be made for the Burleigh House Condominium, which included floor plans for the various types of apartments. (Plaintiffs' exhibit 5). The sizes and dimensions of the apartments were computed on a gross floor area in accordance with the provisions of the South Florida Building Code. The total square foot area of the apartments, as shown on the preliminary architectural plans, was shown and utilized on the sales brochures furnished to prospective purchasers.

The working or building plans by which the apartments were constructed modified the configuration of the apartments and reduced the size of the outside balconies. This was necessitated by structural engineering requirements, and made the construction work more expensive to the developer. Purchasers were notified of the modification in the balconies. (Plaintiffs' exhibit 4). The floor plans of the apartments under the working plans were included in the condominium documents furnished to the purchasers. The apartments were constructed in accordance with the condominium plans (defendant's exhibit D).

The testimony of plaintiffs' own expert witness, Crain & Crouse, Inc., consulting engineers, established that the total square footage areas of all the apartments, as built, exceeded the total square

footage areas shown on the sales brochures. Thus, although the apartments, as built, varied somewhat from the configuration shown on the sales brochures, the as built apartments are larger in total area than those shown on the sales brochures. The evidence shows that the apartments have a substantially greater market value than when plaintiffs contracted to purchase them, and therefore plaintiffs have sustained no damage or financial detriment by reason of the modifications. No fraud or deceit on the part of the developer has been shown. In fact, the developer in good faith intended to construct the apartments in accordance with the floor plans shown on the sales brochures.

On the basis of the evidence, the court finds for the defendant and against the plaintiffs on the issues involved in this count.

### Count Two, Case No. 70-14180

By this count, plaintiffs reallege the matters set forth in the preceding count, and demand judgment requiring defendant to specifically perform the purchase contracts by conveying to plaintiffs apartments of the sizes and dimensions as represented by the sales brochures. Plaintiffs also demand damages.

There is no evidence tending to show any damages sustained by plaintiffs. On the contrary, the evidence establishes that the apartments have substantially increased in value.

Plaintiffs seek specific performance of alleged representations of the exact sizes and dimensions of apartment units as shown on sales brochures. The record reflects that, although minor variations exist between the floor plans shown on the sales brochures and the apartments as constructed, the total area of the finished apartments exceeds those shown by the sales brochures. Specific performance of the sales brochure dimensions would be tantamount to requiring the entire reconstruction of the condominium. Plaintiffs have failed to demonstrate that they are entitled to the remedy of specific performance, or that they have sustained any damages.

The court finds for defendant and against the plaintiffs on the issues involved in this count.

### Count Three, Case No. 70-14180

By this count, plaintiffs demand judgment that defendant be required to specifically perform representations reflected by the sales brochures and oral representations as to the following —

(a) The size of the frost-free proof refrigerator freezers to be installed in each apartment.

(b) The quality and price of the plumbing fixtures to be installed in each apartment.

(c) The quality of the vanities to be installed in each apartment.

(d) The quality and costs of the carpeting and padding to be installed in each apartment.

(e) The decorative scoring which was to be applied to all of the doors of the cabinets to be installed in each apartment.

(f) The sliding glass shower doors to be installed in each apartment.

(g) The landscaping and furnishing of the roof top garden.

(h) The installation of a salt water pool as a community facility.

(i) The location of said swimming pool.

(j) The size and quality of the ocean front beach which would be condominium property.

(k) The availability of salt water fishing and boating to the condominium property.

(l) The type of windows which would be installed in each apartment.

(m) The fact that the top floor was to have a covered overhang.

Plaintiffs also demand judgment for damages.

No proof was submitted with respect to some of these items. Others involve plaintiffs' interpretation of contents of the sales brochures. Others have been provided. For example, the top floor of the condominium does in fact have a covered overhang. The swimming pool is located as shown on the sales model of the condominium. Samples of the carpeting and padding were furnished to purchasers for their selection of colors.

The evidence fails to support the claims alleged in this count. No fraud and deceit on the part of the developer has been shown. No oral misrepresentations were made.

Accordingly, the court finds for the defendant and against the plaintiffs on the issues involved in this count.

### Count Four, Case No. 70-14180

Plaintiffs reallege the matters set forth in the preceding counts. They allege the making of a demand upon defendant that it perform its obligations under the contracts to purchase or give plaintiffs adequate assurance that said obligations will be performed, but that defendant failed and refused to perform or to give assurances. (See defendant's exhibit O). Plaintiffs allege they have fully performed the contracts to purchase. It is alleged that the contracts to purchase have been breached by defendant.

Plaintiffs demand judgment for damages against defendant.

The court finds that plaintiffs have failed to prove the allegations contained in this count. The evidence establishes that defendant has not breached any provisions of the contract. Therefore, the court finds for defendant and against plaintiffs on the issues involved in this count.

## *Count Five, Case No. 70-14180*

Plaintiffs reallege all matters set forth in preceding counts, except count four. Plaintiffs further allege they will be irreparably damaged if defendant is allowed to require closings on the apartment units by the purchasers.

Plaintiffs pray for an injunction temporarily enjoining defendant from closing on any apartment units with any purchaser.

Prior to trial, the court had a hearing on separate motion of plaintiffs to enjoin closings of the sale and purchase of all apartment units. Upon consideration thereof, the court denied plaintiffs' motion for injunction. At the time of trial, approximately one-third of the purchasers had proceeded to close and acquire title to individual apartment units. Plaintiffs failed to show irreparable damage or any basis for injunctive relief against the closings. One of the plaintiffs testified at trial that she had brought suit to compel defendant to close in accordance with the written agreement to purchase. Therefore, the matter of a temporary injunction to enjoin closings of the apartment units is moot.

Accordingly, the court finds for defendant and against plaintiffs on the issues involved in this count.

## *Count Six, Case No. 70-14180*

Plaintiffs allege that the contracts to purchase apartment units in the Burleigh House Condominium provide for payment of the closing costs by the purchasers. Plaintiffs further allege the developer represented that the amounts specified for closing costs constituted the normal and actual expenses to buyers of realty in Dade County for closing a real estate transaction. Plaintiffs charge that such representation was false, in that the contract closing costs exceed the amount of actual closing costs and constitute a profit to the developer.

Plaintiffs demand judgment modifying and reforming the purchase contracts as to the amount specified for closing costs, so as to reflect only the actual cost of closing these transactions.

The court finds for defendant and against plaintiffs on the claim asserted by this count. No affirmative proof of the allegations was produced by plaintiffs. Plaintiffs failed to establish that the alleged misrepresentations in fact were made, and plaintiffs failed to show what the actual costs of closing the transactions were, or that the closing costs specified in the contracts exceeded the actual costs. It appears that plaintiffs either abandoned or overlooked this claim at trial.

The evidence before the court indicates that the closing costs were uniformly fixed in the purchase contracts at three and one-half percent of the purchase price by specific amounts with the knowledge of purchasers. It further appears that such amounts are less than the actual costs of closing where mortgage financing is involved, resulting in a loss to the developer.

Case No. 79-16198 is brought by plaintiffs against Burleigh House, Inc., the developer, Herbert Buchwald, individually and as trustee, the owner of the recreation facilities, and Burleigh House Condominium, Inc., the condominium association. This case involves the recreation facilities of the Burleigh House Condominium and the community facilities lease under which the recreation facilities owned by Herbert Buchwald, as trustee, are leased to the condominium association for the use of the purchasers of the apartment units. Plaintiffs claim the recreation facilities belong to the purchasers of the apartment units, and that the recreation facilities should be declared to constitute a part of the common elements of the Burleigh House Condominium. This claim is predicated upon alleged fraud and deceit arising out of oral misrepresentations made to the purchasers of apartment units at or prior to the execution of the purchase contracts.

On the basis of the testimony and evidentiary exhibits, the court finds that the lands forming the site of the Burleigh House Condominium were purchased under and pursuant to the provisions of a joint venture agreement (defendants' exhibit A) between Herbert Buchwald, as trustee, and a group of individuals not parties to this litigation. The joint venture agreement contemplated and provided that the recreation facilities would be owned by the persons named in the joint venture agreement, with the record title vested in Herbert Buchwald, as trustee.

Title to the lands was vested in Burleigh House, Inc., which conveyed the recreation facilities to Herbert Buchwald, as trustee. (Defendants' exhibit A). A purchase money mortgage was given to secure the payment of the purchase price. (Defendants' exhibit A).

Herbert Buchwald, as trustee, holds title to the recreation facilities under the provisions of a declaration of trust (defendants' exhibit B) for the use and benefit of the beneficiaries named therein.

Herbert Buchwald, as trustee, leased the recreation facilities to the condominium association under the community facilities lease, dated December 15, 1969, and recorded December 23, 1969, in official records book 6694, at page 593 of the public records of Dade County, as a part of the condominium documents (plaintiffs' exhibits 1 and 2). The community facilities lease also was separately recorded in official records book 6695, at page 140 of the public records of Dade County.

The apartment units were offered for sale to prospective purchasers under an agreement to purchase (defendants' exhibit K) wherein it was provided that — "The nature of the rights and undertakings of the buyer in acquiring and owning such apartment are controlled and will be subject to . . . a community facility lease as to the recreational facilties." The sales material exhibited to prospective purchasers included a wall display depicting the recreation facilities (defendants' exhibit F), and a display setting forth that the maintenance costs of purchasers included payment for use of the recreational facilities (defendants' exhibit G).

Plaintiffs alleged and produced testimony to the effect that the agreement to purchase apartment units was executed in reliance upon representations made by sales personnel that the Burleigh House would be a "true condominium" similar to the New York type of condominium, in that the purchasers of the apartment units would own the recreation facilities as part of the common elements of the condominium; that the recreation facilities would belong to the apartment owners; and that there would be no leases affecting the apartment owners. All the sales personnel called as witnesses denied that any such representations were made, and on the contrary they testified that prospective purchasers were fully informed that there would be a community facilities lease covering the recreation facilities.

Copies of the condominium documents, including the community facilities lease, governing the Buckley Towers, a condominium developed by Herbert Buchwald, were at the sales office of the Burleigh House and made available for examination by prospective purchasers of Burleigh House apartment units, or their counsel. (Defendants' exhibit E). It appears that the community facilities lease of the Buckley Towers and the Burleigh House are virtually identical. The Buckley Towers lease was utilized to show prospec-

tive purchasers the nature and character of the proposed Burleigh House community facilities lease, which was not in existence at the time.

During January and February 1970, purchasers were furnished complete copies of the Burleigh House condominium documents, including the community facilities lease, to which no complaints or objections were made until shortly prior to instituting this consolidated litigation.

The purchasers testifying at the trial were persons of experience in the conduct of business, occupying positions of responsibility in their work, with experience and capabilities in buying and selling property. Some of them were lawyers. It is difficult to believe that prospective purchasers of their business acumen and experience could be easily misled by sales personnel, or that they had any reasonable basis for misunderstanding the written material made available to them. The unexplained delay in asserting their claims also is significant in evaluating the probative effect of the conflicting testimony.

The thrust of plaintiffs' claims is alleged fraud and deceit practiced on purchasers by inducing them to contract for purchase of apartment units in the Burleigh House Condominium by making oral representations directly contrary to the plain language of the written purchase contract, which oral representations were relied upon by the purchasers. Plaintiffs do not seek rescission or cancellation of the purchase contracts claimed to have been procured by fraudulent misrepresentations. Plaintiffs in effect urge the court to specifically enforce the alleged fraudulent misrepresentations by cancelling the community facilities lease and divesting defendant of title to the recreation facilities and placing ownership thereof in the purchasers.

It has been stated that for the equitable enforcement of an oral contract, plaintiffs must establish such contract by clear, definite and certain proof, a preponderance of the evidence not being sufficient. Boyer, *Florida Real Estate Transactions,* vol. 1, §1.03, page 14.

In Miller v. Murray, Fla. 1953, 68 So.2d 594, 596, the Supreme Court of Florida held that —

> . . . In this jurisdiction the rule is settled beyond question "that in a suit for specific performance of an alleged contract for the sale of real estate the plaintiff must do more than merely prove his case by a preponderance of the evidence * * * he must prove the contract as alleged

in his complaint by competent and satisfactory proof which must be clear, definite and certain. See Maloy v. Boyett, 53 Fla. 956, 43 So. 243; Williams v. Bailey, 69 Fla. 225, 67 So. 877; Rundel v. Gordon, 92 Fla. 1110, 111 So. 386; Alexander v. Bess, 123 Fla. 713, 167 So. 533; White v. Cohn, 137 Fla. 501, 188 So. 581." Miller v. Gardner, 144 Fla. 339, 198 So. 21, 23.

And in Mann v. Thompson, Fla. App. 1958, 100 So.2d 634, 636, the court said —

> Specific performance of a contract will not be enforced unless the agreement is clearly established. To enforce performance of a parol contract to lease land, the agreement must be established by more than a mere preponderance of the evidence. Even where the terms of the contract are clear, certain, and unambiguous, specific performance is not a matter of right, but rests in the sound discretion of the court to be determined from all the facts and circumstances . . .

The court finds that plaintiffs have failed to establish by a preponderance of the evidence, and certainly not by any clear, definite and certain proof, that the alleged oral misrepresentations were made. On the contrary, the evidence demonstrates that full disclosure was made concerning the community facilities lease, and that purchasers were not in anywise fraudulently misled by any actions or conduct on the part of the defendants or their sales representatives.

The recreation facilities involved are designated and described as follows —

> That portion of the condominium property designated as "Recreation Units" in the Declaration of Condominium of Burleigh House, together with appurtenances thereto, being Recreation Units, A, B, C, D, E, F, G, H, J, K, L, M, N, O, P, Q, R, S, T and U in Burleigh House, a condominium, Dade County, Florida . . .

The recreation facilities are lawfully owned by the defendant, Herbert Buchwald, as trustee, under and pursuant to the provisions of the declaration of trust (defendants' exhibit B), and the community facilities lease (plaintiffs' exhibit 1) constitutes a valid lease agreement binding upon the condominium association and the purchasers of apartment units in the Burleigh House Condominium.

### Count One, Case No. 70-16198

Plaintiffs allege that, at or before the execution of the purchase contract, purchasers questioned the provisions of paragraph 3 of the purchase contract providing that the rights of purchasers would be subject to a community facilities lease as to the recreational

facilities, and it was represented that Burleigh House would be a "true condominium" in that the owners of apartment units would own all the land and all the common areas, and that the recreational areas would be included in the common areas of the condominium, and that the management of the common areas, including the recreation units described in the community facilities lease, would belong to the condominium association. That such representations were untrue, or that defendant thereafter acted contrary to such representations.

Plaintiffs further allege that the community facilities lease was not in existence at the time of execution of the purchase contracts. By reason whereof, purchasers relied upon said representations in entering into purchase contracts.

Plaintiffs further allege that, contrary to said representations, the recreation facilities were leased to the condominium association under the terms of the community facilities lease.

Plaintiffs demand judgment rescinding the community facilities lease.

On the basis of the findings of fact and conclusions of law hereinabove set forth, the court finds for the defendants and against plaintiffs on the issues involved in this count.

### Count Two, Case No. 70-16198

Plaintiffs reallege the matters set forth in the preceding count, and further allege that Herbert Buchwald owned controlling interest in the developer corporation and the condominium association, and controlled their affairs and actions. Plaintiffs claim that, because of the fraudulent representations of the developer, Herbert Buchwald would be unjustly enriched if allowed to retain title to the recreation facilities; that the equitable title to the recreation facilities should be vested in the purchasers of apartment units.

Plaintiffs demand judgment holding that Herbert Buchwald holds title to the recreation facilities as constructive trustee for all the purchasers of apartment units.

The court finds for the defendants and against the plaintiffs on the issues involved in this count.

### Count Three, Case No. 70-16198

After realleging the matters set forth in counts one and two, plaintiffs allege that, by virtue of the fraud perpetrated by defendants upon plaintiffs, the legal title to the recreation facilities should be vested in the developer, Burleigh House, Inc., and conveyed by

the developer to the purchasers of apartment units upon closing the sales thereof.

Plaintiffs demand judgment cancelling the deed by which Herbert Buchwald acquired title to the recreation facilities.

The court finds for the defendants and against the plaintiffs on the issues involved in this count.

### Count Four, Case No. 70-16198

After realleging the matters set forth in counts one, two and three, plaintiffs allege that the developer represented that the entire condominium property, including the recreation facilities, would be common elements belonging to the individual owners of the apartment units.

Plaintiffs demand judgment declaring the developer, Burleigh House, Inc., holds the recreation facilities as constructive trustee for the apartment owners, and for judgment reforming the declaration of condominium to provide that the recreation facilities constitute common elements belonging to the owners of apartment units.

The court finds for the defendants and against the plaintiffs on the issues involved in this count.

### Count Five, Case No. 70-16198

After realleging all matters set forth in counts one, two, three and four, plaintiffs allege that, by virtue of the fraudulent acts of the defendants, the purchase money mortgage given to secure payment of the purchase price for the recreation facilities (defendants' exhibit A) recorded in official records book 6728, at page 244 of the public records of Dade County, constitutes a cloud on plaintiffs' equitable title to the recreation facilities.

Plaintiffs demand judgment cancelling said mortgage.

The court finds for the defendants and against the plaintiffs on the issues involved in this count.

In consideration of the foregoing findings of fact and conclusions of law, it is therefore ordered and adjudged that —

(1) The above styled consolidated actions, and each count therein set forth, are dismissed with prejudice, at the cost of the plaintiffs.

(2) The notice of lis pendens filed by plaintiffs in Case No. 70-16198 upon the property designated as recreation units of the Burleigh House Condominium is hereby cancelled and rendered null and void.