932 So.2d 1258 (2006)
BREVARD COUNTY, Florida, Appellant,
v.
Charles R. STACK, Trustee etc., Appellee.
No. 5D05-2935.
District Court of Appeal of Florida, Fifth District.
July 14, 2006.
*1259 Scott L. Knox, County Attorney, of the Office of County Attorney, Viera, for Appellant.
Lauri Waldman Ross, of Lauri Waldman Ross, P.A., Miami, and Phillip A. Hubbart of Wetherington, Klein & Hubbart, Miami, for Appellee.
Steven Geoffrey Gieseler and Valerie A. Fernandez of Pacific Legal Foundation, Coral Gables, Amicus Curiae.
SHARP, W., Senior Judge.
Brevard County (the County) appeals a non-final order,[1] which granted partial summary judgment in favor of the appellees,[2] after they brought suit against the County under the Bert J. Harris, Jr. Act (the Act), section 70.001, Florida Statutes (2004). The order determined the issue of liability in favor of appellees, and reserved the issue of damages for a subsequent trial. In this appeal, the County argues that the Act is unconstitutional, and that *1260 the trial court failed to make findings required by the Act. We affirm in part, reverse in part and remand to the trial court.
The facts of this case are not in dispute. Appellees purchased two adjoining parcels of land for investment purposes in 1984 and 1987. The parcels consist of over four acres, and are located near the northwest corner of Wickham Road and Interlachen Road (the Property). In the center of the Property is a wetlands area of about one acre. The zoning for these parcels was designated BU-1, a general retail commercial zoning classification, under the Brevard County Zoning Regulations at the time it was purchased. Since August 2001, it has been designated "community commercial" on the Future Land Use Map.
In September of 2000, the County adopted section 62-3691, et seq., of the Brevard County Code, known as the "Brevard County Wetlands Protection Act" (the Ordinance). Subsection 62-3694(c)(2) of the Ordinance provides that, with certain exceptions, commercial land development activities are prohibited in wetlands contained in properties designated on the Future Land Use Map as commercial after February 23, 1996.
On March 17, 2003, appellees and Douglas Development Group, Inc. (Douglas) executed a contract for sale of the Property for $1.1 million. Douglas intended to develop the Property as a 10,000 square foot shopping plaza and a 6,000 square foot restaurant, with 170 parking spaces, 35 of which were to be located in the wetlands area in the center of the Property, and required the destruction of that wetlands area. Douglas had 90 days to investigate the permitted uses of the Property and cancel the contract.
Douglas' proposed site plan was in conformity with all County zoning and development requirements, except for the Ordinance. Douglas intended to mitigate the wetlands offsite, and received approval to do so from the St. John's Water Management District. Douglas then sought approval of its site plan by the County, based on an exception listed in the Ordinance.
However, the County Office of Resource Management advised Douglas that the wetlands area could not be impacted by the proposed development, and any type of wetlands listed in section 62-3694(c)(3) of the Ordinance would require a natural, native upland buffer with wetlands ranging from fifteen to fifty feet, depending on the type of wetland. As a result Douglas cancelled the contract.
Appellees submitted a Notice of Claim for $760,000 to the County for reduction in value of the Property pursuant to section 70.001(4) of the Act. The claim was later increased to $1 million. The County responded to appellees' Notice of Claim with a "ripening decision" i.e., an alternative layout plan prepared by County staff.
The County's plan reflected the same intensity of commercial development as that proposed by Douglas, but reduced the number of parking spaces from 170 to 102. It also required construction of a bridge across the wetlands area for passage from the eastern portion of the Property to the western portion (one parcel to the other), to facilitate access to the Property. Other waivers and modifications, including buffering and grading requirements, and allowing the use of a portion of the wetlands for storm water management, were included in the County's plan, which the County approved.
Appellees obtained a certified appraisal which indicated that prior to enactment of the Ordinance, the Property consisted of 142,006 square feet of buildable land, with *1261 a value of $1.7 million.[3] After enactment of the Ordinance, the property consisted of only 98,446 square feet of buildable land, with a value of $700,000;[4] a loss of $1 million. The appraiser found that the County's plan did not cure the problems created by the Ordinance, and that the diminution of value remained the same, because the plan required that the Property be bisected, it did not provide for sufficient parking, and it made no provision for a traffic signal. All of these factors made the Property less attractive to a developer.
Appellees filed suit under the Act and eventually filed a motion for partial summary judgment on the issue of liability, in which they asserted that they had pre-existing property rights and "reasonable investment backed expectations" at the time they purchased the Property. They argued that the Property had suffered a significant diminution in value due to the Ordinance, and that the Ordinance, as applied, denied them their rights under the Act, including the ability to develop over the wetlands and mitigate at an off-site location. The circuit court agreed and entered the order from which the County appeals.
On appeal, the County argues that the Act is unconstitutional for a variety of reasons. First, it submits that the Act authorizes local governments to contract away their inherent sovereign police powers, and requires them to buy-back their ability to exercise those powers, both of which violate the due process clause. We view the Act in a different light.
In the Act, the Legislature expressed its recognition that in some instances, laws, regulations, and ordinances of the state and its political subdivisions, as applied, may inordinately burden, restrict, or limit private property rights without amounting to a taking. § 70.001(1), Fla. Stat. The Legislature determined that there was an important state interest in protecting private property owners from these burdens, and provided relief in the Act by establishing a new cause of action, where none previously existed.[5] § 70.001(1), (9), Fla. Stat.
Where property is inordinately burdened by a regulation, the Act provides relief to the owner. § 70.001(2). It requires the state and its political subdivisions to, inter alia, waive, modify, transfer, purchase or financially compensate the property owner by entering into a settlement agreement providing relief, as enumerated in section 70.001(4)(c). The Act does not affect the inherent power of a governmental entity, but merely requires the government to provide relief, in fairness, to a property owner. This is not and does not lead to a due process violation.
The state has police power to enact laws reasonably construed as expedient for protections of the public health, safety, welfare, or morals. State v. Saiez, 489 So.2d 1125, 1127 (Fla.1986). The state's police power embraces regulations designed to promote the public convenience or the general prosperity or the public welfare as well as those designed to promote the public safety or the public health. Atlantic Coast Line R. Co. v. Coachman, 59 Fla. 130, 52 So. 377 (1910). *1262 The Legislature is vested with a great deal of discretion to determine public interest and the measures for its protection. See Newman v. Carson, 280 So.2d 426 (Fla. 1973); McInerney v. Ervin, 46 So.2d 458 (Fla.1950); Scarborough v. Newsome, 150 Fla. 220, 7 So.2d 321 (1942).
The due process clause does not override the power of the state or its political subdivisions to establish laws that are reasonably necessary to secure the health, safety, good order, comfort, or general welfare of the community. Atlantic Coast Line R. Co. v. City of Goldsboro, 232 U.S. 548, 558-559, 34 S.Ct. 364, 58 L.Ed. 721 (1914). See also Munao, Munao, Munao and Munao v. Homeowners Association of La Buona Vita Mobile Home Park, Inc., 740 So.2d 73, 76 (Fla. 4th DCA 1999). In enacting section 70.001, the Legislature acted within its authority and for the benefit of its citizens as a whole.
Because the Act establishes a new cause of action and requires the governmental entity to grant relief to the owner in one form or another, the provision cannot be characterized as a "buy-back" of a governmental entity's inherent power. For the same reasons, we reject a related argument made by the County, that it constitutes an illegal gift of public funds.
The County also argues the Act is unconstitutional because it violates the separation of powers doctrine, and alters and enlarges the judiciary's interpretation of a taking under the Florida Constitution. We reject this contention as well because the Act clearly provides that the Legislature has established a new cause of action, independent from a taking, sections 70.001(1), (9); and that it is not a taking. § 70.001(13).
The remaining challenge to the Act's constitutionality is that it delegates legislative power to the courts because the Act contains no standards, conditions or criteria to guide the judiciary in interpreting it. This claim has no merit. The Act contains definitions;[6] time periods;[7] settlement options;[8] and other requirements and guidance for the judiciary[9] to enable it to make the determinations required under the statute. In sum, we do not find that any of the challenges made by the County regarding the constitutionality of the Act are viable.
However, the County's claim that the trial court failed to make findings required by the Act has more substance. Subsection (6)(a) of the Act provides that the circuit court "shall" determine
whether an existing use of the real property or a vested right to a specific use of the real property existed, and if so, whether, considering the settlement offer and ripeness decision, the governmental entity or entities have inordinately burdened the real property .... (emphasis added)
We have reviewed the order on appeal and find that the trial court failed to make either of these required findings. We must therefore remand to the trial court for its review to make these findings as required by the Act.
AFFIRMED in part; REVERSED and REMANDED in part.
PLEUS, C.J., and MONACO, J., concur.
NOTES
[1] See Fla. R. App. P. 9.130(a)(3)(C)(viii). Rule 9.130(a)(3)(C)(iii) was added to make rule 9.130 consistent with section 70.001(6)(a), which permits a governmental entity to take an interlocutory appeal of a determination that a government action has resulted in an inordinate burden. Amendments to the Florida Rules of Appellate Procedure, 894 So.2d 202 (Fla.2005).
[2] Charles Stack (Stack) is the Trustee of an investment group (the Group), which includes Michelle Headley, Eugene Kubicki, Harold Barkas and himself.
[3] That is, 142,006 square feet x $12.00 a square foot = $1,704,072.
[4] That is, 98,446 square feet x $7.00 a square foot = $689,122. There was a loss of 43,560 square feet and a reduction in value of $5.00 per square foot.
[5] The law of regulatory takings is insufficient to provide relief to private property owners unless those owners were either ousted from, or deprived of, all beneficial use of their property. Lee County v. Kiesel, 705 So.2d 1013 (Fla. 2d DCA 1998).
[6] § 70.001(3), Fla. Stat. (2004).
[7] § 70.001(4), Fla. Stat. (2004).
[8] § 70.001(4)(c), Fla. Stat. (2004).
[9] § 70.001(4)(d), (5)(12), Fla. Stat. (2004).