MORGAN RUNDEL, *Appellant,* v. LUCY C. GORDON, AS EXECU-
TRIX OF THE WILL OF HORACE GORDON, DECEASED, AND
LUCY C .GORDON AND L. L. BUCHANAN, *Appellees.*

## Division A.

## Opinion Filed January 3, 1927.

1. A bill for specific performance of a contract for the sale of
land and to declare a trust in the land for the benefit of the
vendee where title to the land has been conveyed by the
vendor to a third person should contain clear allegations as
to the essential elements of the contract sought to be en-
forced as well as the title holder's knowledge of its terms as
well as existence.

2. A contract which is sought to be specifically enforced in
equity should be definite and its enforcement practical and
equitable.

3. The remedy by specific performance is granted of grace and
rests in discretion.

4. To reverse the decree of a chancellor refusing to order spe-
cific performance of a contract it must appear to the appel-
late court clearly that the chancellor has erred.

5. Where it is sought to enforce in equity a contract for the
sale of land it is essential that the terms of the contract
shall be expressed with reasonable certainty.

6. Where a bill in equity for the specific performance of a con-
tract for the sale of land has attached to it the contract
sought to be enforced, and which is made a part of the bill,
the contract will be read in connection with the allegations
of the bill to determine the existence of any grounds for
relief.

7. When written memoranda are relied upon to take a contract for the sale of land out of the Statute of Frauds the writings themselves should show the essential elements of the contract; such matter cannot be left to oral evidence.

8. When the vendee in a contract for the purchase of lands in which the vendor's wife has an inchoate dower interest but does not join in the contract of sale seeks specific performance of the contract by both husband and wife, he should allege in the bill that at the time of entering into the contract he either did or did not know of the wife's interest, as the fact might be, and frame the prayer of the bill for conveyance of what the husband can give with abatement of the price or not according to the fact.

An Appeal from the Circuit Court of Hillsborough County; F. M. Robles, Judge.

Decree affirmed.

*Kelly & Sutton,* for Appellant.

*Gibbons & Gibbons, Horace C. Gordon* and *Sparkman & Knight,* for Appellees.

ELLIS, C. J.—This is an appeal from an order sustaining a demurrer to a bill of complaint and dismissing the bill.

The complainant, Rundel, exhibited his bill of complaint against Horace C. Gordon and Lucy C. Gordon, his wife, and L. L. Buchanan for the specific performance of an alleged contract for the sale of certain land in Hillsborough County made between Hoarce C. Gordon and the complainant and to declare the existence of a constructive trust for the complainant's benefit in the lands as held by L. D. Buchanan, to whom Gordon and his wife conveyed after the complainant acquired his alleged interest in it under the contract with Gordon.

Horace C. Gordon died in June, 1924, and upon the suggestion of his death, Lucy C. Gordon, as executrix of his will, was substituted as defendant in his place.

A demurrer was then interposed to the bill on July 7th following and an order sustaining the demurrer and dismissing the bill was entered, from which the appeal was taken.

The bill alleges that in May, 1923, Horace Gordon entered into written agreement with the complainant to sell the land, which was described in the bill. It is alleged that Gordon agreed to sell the land for the sum of $40,000.00, of which $5,000.00 was to have been paid in cash and the remaining $35,000.00 in the following manner: "$30,000.00 of the said balance of the purchase price to bear interest at the rate of eight per cent per annum and the remaining $5,000.00 of the said purchase price to be paid without imposition of interest as by the said agreement hereto attached will more fully appear." It is alleged that the complainant accepted the "terms, conditions and provisions contained in the said agreement herein before referred to and that he has always been willing and ready to comply with the terms of the said agreement on his part to be performed and has complied up to the date of the filing of the bill of complaint, with all of the covenants, terms and conditions on his part to be performed." That he is "ready, eager and willing" to comply with the terms of the contract and to pay to the defendant the "monies mentioned in said contract and agreed by him to be paid upon delivery of a deed to the said premises as in the said contract provided for, upon the delivery by the said defendant to the said First Savings & Trust Company of Tampa of a good and sufficient warranty deed for the said premises according to the said agreement." That under the terms of the agreement the complainant was to pay $500.00 in

cash as part of the purchase price and upon the execution and delivery of a deed of conveyance of the land to the First Savings & Trust Company of Tampa the sum of $5,000.00 in cash; that $500.00 has been paid.

It is alleged that the defendant, Gordon, agreed to furnish an abstract of title to the land, to convey the same by warranty deed, and if there should be a default in the title to remedy the same by suit to "quiet title or otherwise;" that Gordon furnished the abstract of title, the complainant accepted it and notified Gordon of his willingness to accept the title which Gordon had and requested him to convey the land to the Savings & Trust Company mentioned and the complainant would carry out the covenants upon his part assumed; that the Savings & Trust Company was willing to accept the trust and hold the same under the terms and conditions of the contract and "to do those things set out and recited in the said contract to be done by the said trustee in the premises."

Buchanan is made a defendant because it is alleged that he acquired a deed to the property from Gordon and his wife subsequently to the making of the agreement with knowledge of its existence and all its terms.

The bill alleges that the Trust Company named was, under the agreement, to hold the title to the land for the complainant until the entire purchase price had been paid. A part of the second paragraph of the bill contains the following words: "All of which will more fully appear by a copy of the said contract or agreement which is hereto attached and made a part of this bill of complaint."

The eighth paragraph of the bill contains the allegation that the complainant prepared a plat of the lands for the purpose of offering the various lots or tract for sale, as provided in the agreement, and that he entered "into and upon the premises and did make the improvements in ac-

cordance with the terms and conditions of the said agreement and did in every way show his willingness to comply with all the terms of the said contract and to fully perform the same and that he has fully performed all of the conditions and covenants of the said contract on his part to be performed.''

There are copies of two letters attached to the bill: one dated May 14, 1923, at Tampa, Florida, addressed to Judge H. C. Gordon and signed by Morgan Rundel, the other dated May 17, 1923, addressed to Mr. Morgan Rundel, acknowledging receipt of the check for $500.00 ''to apply on purchase price'' of the land and signed by Horace C. Gordon. Neither letter is marked as an exhibit to the bill and neither is identified by the language of the bill or any sign upon the letter as the contract or memorandum of the agreement sought to be enforced.

The language of the bill considered without reference to either letter is not sufficiently definite in setting out the terms of the alleged agreement to justify a prayer for specific performance. Taking the language of the bill only no contract could be formulated which could be said with any degree of accuracy to have been the contract entered into between the parties. The parties and the description of the land and price to be paid are alleged with sufficient definiteness and that the land was to be conveyed to a Trust Company to be held in trust until the agreement was fulfilled is also clear; but it is apparent from the allegations of the bill that many other things were to be done by complainant and defendant and the trustee.

The trustee was to accept the trust ''under the terms and conditions of the said contract and to hold the same in trust for your orator (the complainant) in accordance with the provisions of the said contract and to do those things set out and recited in said contract to be done by the said

trustee in the premises.'' The terms and conditions and things to be done are not alleged. All the allegations of the bill in relation to the trustee negative the idea that the trust was to be a mere naked trust. The defendant was to deliver a deed of conveyance to the trustee ''according to the agreement.'' What covenants the deed was to contain, or what provision made therein for the security of the defendant, if any, is a matter of surmise only. The complainant was to replat the land for the purpose of offering lots for sale, making improvements upon the land, and paying a balance of $35,000.00 after the cash payment of $5,000, of which balance $30,000.00 only was to bear interest, also appears to be required of him; but whether the price at which the lots were to be offered was to be with defendant's approval, and what provision made for conveyance of such lots by the trustee when sold and how and on what terms released from defendant's lien for the purchase price are matters which are left to conjecture. Nor does the bill allege when or in what installments the balance of $35,000.00 was to be paid nor how the payment thereof was to be secured to the defendant.

In the absence of clear allegations as to the essential elements of a contract for the sale of land which the bill suggests but does not specify, it is obviously impossible for a court of equity to decree specific performance of it, so the bill therefore makes no case.

Unless it clearly appears that the Chancellor has erred in his decree in refusing specific performance it will not be disturbed on appeal. See Gaskins v. Byrd, 66 Fla. 432, 63 South. Rep. 824; Murphy v. Hohne, 73 Fla. 803, 74 South. Rep. 973.

The remedy is granted of grace and rests in discretion. See Knox v. Spratt, 23 Fla. 64, 6 South. Rep. 924; Asia v. Hiser, 38 Fla. 71, 20 South. Rep. 796; Nobles v. L'Engle,

61 Fla. 696, 55 South. Rep. 839; Williams v. Bailey, 69 Fla. 225, 67 South. Rep. 877.

The contract should be definite and its enforcement practical and equitable. See Maloy v. Boyett, 53 Fla. 956, 43 South. Rep. 243; L'Engle v. Overstreet, 61 Fla. 653, 55 South. Rep. 381.

Where it is sought to enforce in equity a contract for the sale of land it is essential that the terms of the contract shall be expressed with reasonable certainty, and what is reasonable in any case must depend upon the subject matter of the agreement, the purpose for which it was entered into, the situation and relation of the parties and the circumstances under which it was made. The same requisite of certainty applies to the statement of the essential terms of the contract in the bill of complaint. See Pomeroy's Specific Performance of Contracts (3 Ed.) 159; Iron Age Publishing Co. v. Western Union Telegraph Co. 83 Ala. 498, 3 South. Rep. 449, 3 Am. St. Rep. 758; Burnett v. Kullak, 76 Cal. 535, 18 Pac. Rep. 401; Burke v. Mead, 159 Ind. 252, 64 N. E. Rep. 880; Lee v. Stone, 21 R. I. 123, 42 Atl. Rep. 717.

The rules of equity pleading require that the terms of the contract must be distinctly, definitely and precisely stated in the bill so that the court may not be left to inference as to its terms or as to the rights of the parties, and so that the court may see that the contract is one which it is equitable to enforce. See Maloy v. Bennett, *supra*.

As the bill considered without reference to the memoranda of the alleged contract is without equity we must read the memoranda which is made a part of the bill to ascertain if the lacking equity is supplied thereby. At this point a doubt arises if both letters were intended to be made a part of the bill and together were relied upon to supply the written memorandum of the agreement required by the

statute. They are referred to in both the briefs for appellant and appellee although in the oral argument there was some disagreement between counsel on this point. The chancellor seemed to so regard them and as they are both attached to the bill and referred to as the "said contract or agreement" and as written communications between the parties to such an agreement consisting of letters and telegrams may constitute the memoranda required by the Statute, we will consider both letters as constituting the memoranda of the agreement sought to be enforced. See Harvey v. Hayes, 71 Fla. 346, 71 South. Rep. 282; Simons v. Tobin, — Fla. —, 104 South. Rep. 583; Tucker v. Gray, 82 Fla. 351, 90 South. Rep. 158; Hotel Halcyon v. Miami Real Estate Co., 89 Fla. 156, 103 South. Rep. 403.

When written memoranda are relied upon to take a contract for the sale of land out of the Statute of Frauds the writings themselves should show the essential elements of the contract. Such matters cannot be left to oral evidence. There have been some expressions by this Court which seemingly depart from that rule, but careful examination of the cases will show no substantial variance from the rule. In the case of Simons v. Tobin, *supra,* for instance, the description of the land as contained in the memoranda was by no means certain, yet it was held that when the writings showed that a particular tract was in the minds of the parties as distinguished from other lands parol evidence may be resorted to for the purpose of applying the description or identifying the land. In that case the writings showed that the parties were dealing with regard to a parcel of land identified by them but by no means certain in point of description, yet parol evidence was held admissible to apply the description used in the writings to the particular tract in regard to which they contracted with each other. But such a rule is not applicable as to

the terms and conditions of the contract aside from land description. The matter of consideration, manner of payment, security for deferred payments, interest, dates when they shall become due, acts to be done by either party, and other essential conditions of the contract be certain and must so appear from the written memoranda constituting the contract. See Maloy v. Boyett, *supra;* L'Engle v. Overstreet, *supra;* Dixie Naval Stores Co. v. German-American Lumber Co., 76 Fla. 339, 79 South. Rep. 836; Swisher v. Conrad, 76 Fla. 644, 80 South. Rep. 564, 20 A. L. R. 364 n.

In the latter case it was held that the written memoranda for the sale of lands required by the statute cannot rest partly in writing and partly in parol but the written memoranda must disclose all the terms of the sale. See Rhode v. Gallat, 70 Fla. 536, 70 South. Rep. 471. The reason given for the rule announced in that case is that the Statute of Frauds as adopted in this state is designed to prescribe the only mode by which an otherwise enforceable contract may be evidenced.

An examination of the two letters which are exhibited as constituting the contract of sale show that the minds of the parties had not met upon many essential elements of a contract for the sale of the land described.

It is unnecessary to point out in detail where the parties failed to be in accord upon essential terms and conditions. A brief reference to some of them only is sufficient; Mr. Rundel's payment to Mr. Gordon of $500.00 was not in payment of part of the purchase price of the land to be paid for in a sum agreed upon but the check was sent "as earnest money and evidence of good faith in submitting the proposition" which was afterwards set out in the letter. The proposition describes no land, but refers to "your property", for which an offer of $35,000.00 was made

upon which "an additional sum of $4,500.00" was to be
paid upon the approval of Mr. Gordon's title to the prop-
erty by Mr. Rundel's attorney. The balance of $30,000.00
to be paid in a manner set out at length in the letter, the
substance being that the Trust Company should be in-
structed by Mr. Gordon to execute contracts for the sale
of lots shown by "the proposed plat" at prices to be agreed
on between Mr. Rundel and Mr. Gordon, sixty per cent of
the money paid by purchasers should be held by the Trust
Company until a sufficient amount should have accumu-
lated to pay Gordon in full with interest. No rate of in-
terest was named. Forty per centum of the moneys re-
ceived on the sale of lots should be payable to Mr. Rundel
on "proof of improvements made on the property", which
were to consist of grading and paving roads, laying side-
walks, setting out trees, palms and flowers and construct-
ing "water plant and sewerage". "And the remaining
10% paid in by purchasers of lots to be paid to me."
There is evidently an error here because according to the
letter there would be one hundred and ten per cent to be
distributed of the amount paid by purchasers. Mr. Gor-
don was also to obtain the consent of the person to whom
he had already sold a lot according to the original plat-
ting, to the replatting of the tract and to obtain a "sur-
render of his present deed" and an acceptance from Mr.
Gordon of another deed as per the new platting.

Mr. Gordon did not accept a single one of these proposi-
tions but submitted another proposition instead. The price
was fixed at $40,000.00 for the land, which was particu-
larly described and which excepted lot six (6) of block ten
(10). The terms were to be $5,000.00 cash, $30,000.00
with interest at 8% and $5,000.00 without interest. The
property was to be deeded to the Trust Company and a
"trust agreement" permitting Mr. Rundel to replat the

property according to plans which had been submitted and to "sell lots under contract or for cash according to scale of prices to be agreed upon by both of us." The improvements were to be completed by Mr. Rundel within two years from the date the Bay Shore road on the eastern edge of the property had been paved but in no event later than three years from date. Sixty per cent of the payments to the Trust Company for lots sold was to be held for Gordon and paid to him every six months, ten per cent to be paid to Mr. Rundel for commission on sales and thirty per cent to be paid to him upon proof of making the improvements named. He was to receive the value of each improvement made, but no more, which should never exceed actual cost.

There were other matters upon which the parties had not agreed but which it is unnecessary to discuss. The written memoranda relied upon as constituting the contract does not show that the parties had agreed upon any phase of it. The two letters constitute a proposition and counter proposition.

Now, the bill alleges that the counter proposition of Mr. Gordon was accepted by the complainant and in the third paragraph it is alleged that under the terms of the agreement the sum of $500.00 was to be paid by complainant in cash as part of the purchase price and that it was duly paid to the defendant; but the exhibits refute that allegation. In the first place, the $500.00 was paid by the complainant before the counter proposition was made by Mr. Gordon, and it was paid not as part of the purchase price, but, according to Mr. Rundel's letter, "as earnest money and evidence of good faith in submitting the proposition." But the proposition was not accepted; it was rejected and a counter proposition made.

If the pleader intended to allege that the counter proposition made by Mr. Gordon was accepted he does not

allege that $5,000.00 cash payment required by Gordon was paid or tendered. It is alleged that that sum was to be paid upon delivery of the deed to the Trust Company, but such condition is not contained in the counter proposition; nor is it alleged that they had agreed upon the terms of the "trust agreement" under which the Trust Company was to hold title to the land, make deeds or contracts of sale with purchasers of lots, and hold the proceeds of all sales.

Another feature of the case which is fatal to it is the fact that the wife of Mr. Gordon is not alleged to have become a party to the agreement and waived her inchoate right of dower, as the statute prescribes, nevertheless she is made a party to the bill and the prayer is for a decree requiring Gordon to perform the alleged contract and convey to the trustee for the benefit of the complainant "all the right, title and interest of the said defendants." That the complainant was willing and offered "specifically to perform the agreement on his part and upon the said defendants making a good and sufficient title to the said premises and executing a proper conveyance thereto as in the said agreement provided and as herein prayed to the defendants, or to such of them as the court may direct payment to be made, the residue or balance of the purchase money in accordance with the terms and conditions of the said agreement."

In other words, the prayer is: If Mr. Gordon will convey the land to the trustee, vesting in it all the "right, title and interest of the defendants," which includes Mrs. Gordon's inchoate dower interest although she was not a party to the agreement, the complainant will perform his part of the agreement.

The case is not one for specific performance with statement of price for the value of the wife's dower interest;

nor is there any such prayer, neither is any basis laid for it in the allegations of the bill, even if the doctrine obtains in this state. There is no allegation that the complainant was ignorant of the fact that Gordon was a married man or that he procured Mrs. Gordon's refusal to join in the deed, if such was in fact the case; nor that the deed was not to be a warranty deed. In fact the letter of Gordon stated that under the conditions named he should convey to the Trust Company by ''good and sufficient warranty deed.''

The English rule is that if the vendee knew when the contract was made that the vendor was a married man he, the vendee, is not entitled to ask for anything more than the husband himself can give. On the other hand if the vendee entered into the contract in ignorance that the vendor was married and under the supposition that he could give an unencumbered title then the vendee should have specific performance with abatement from the price in an amount equal to the value of the wife's inchoate dower interest. See Pomeroy's Specific Performance of Contracts, (3 Ed.) 461 and note.

The cases in the United States are not in unison upon the point. See Tebeau v. Ridge, 261 Mo. 547, 170 S. W. Rep. 871, L. R. A. 19150 367.

In Taylor v. Mathews, 53 Fla. 776, 44 South. Rep. 146, the point was not decided; and the case of Fisher v. Miller, 109 Sec. 257, decided at the present term, is not contrary to the doctrine.

The decree of the chancellor was correct. So it is affirmed.

STRUM AND BROWN, J. J., concur.

WHITFIELD, P. J., AND TERRELL AND BUFORD, J. J., concur in the opinion.