311 So.2d 750 (1975)
Lee Royce NICHOLS, Jr., Appellant,
v.
MoAmCO CORPORATION and Silco Corp., Appellees.
No. 74-641.
District Court of Appeal of Florida, Second District.
April 2, 1975.
Rehearing Denied May 6, 1975.
Charles R. Holley and Richard B. Lansdale, Naples, for appellant.
Johnson S. Savary, of Kirk, Pinkerton, Sparrow, McClelland & Savary, Sarasota, for appellee MoAmCo Corp.
A. Lamar Matthews, Jr., of Williams, Parker, Harrison, Dietz & Getzen, Sarasota, for appellee Silco Corp.
SCHEB, Judge.
By this interlocutory appeal the appellant/plaintiff seeks reversal of the trial court's order granting motions to dismiss filed by each of the appellees/defendants. For convenience, we refer to the appellant/plaintiff as Nichols and appellees/defendants as MoAmCo and Silco.
In Count I of his complaint Nichols, as assignee of one Hargarten, claimed a contract right to purchase a 58-acre mobile home park known as Nokomis Park from MoAmCo. Nichols sought specific performance. Although Nichols based his complaint upon various documents and events comprising some 13 separate exhibits, the crux of his claim consisted of a letter *751 of December 21, 1973, from MoAmCo to Hargarten which Nichols construed as an offer to sell[1] and Hargarten's mailgram and letter responses of December 28, 1973, which Nichols contended constituted an acceptance by his assignor.[2]
Viewing Nichols' allegations in Count I in the most favorable light to him, as we must at this stage of the controversy,[3] and assuming the existence of a contract, the contents of the letter which constitutes the alleged offer and the mailgram and letter relied upon as an acceptance do not satisfy the requirements necessary to support a claim for specific performance of a contract for sale of real estate. As stated in Florida Bank and Trust Co. v. Field, 1946, 157 Fla. 261, 25 So.2d 663, to support specific performance, the contract must be definite as to (1) the parties, (2) the price, (3) the subject matter and (4) the mutual promises and miscellaneous terms. See also 29A Fla.Jur., Specific Performance, § 40. Here the written memoranda relied upon by Nichols are deficient in the mutual promises and miscellaneous terms essential to support specific performance of a contract for the sale of a large mobile home park valued in the neighborhood of one and one-half million dollars. In fact the substance of the alleged offer was:
The purchase price is $1,515,000.00. The first and second mortgages are to be assumed. Ernest money of $40,000 and additional cash of $365,000 at closing is to be paid. However, the aggregate cash of $405,000 is to be placed in escrow at the time of the execution of the purchase agreement.
While many of the miscellaneous terms ordinarily included in a contract for sale of real estate (e.g. matters concerning title evidence and examination of title or furnishing of title insurance, provisions concerning the treatment of taxes, rents and insurance etc.) are not included in the foregoing instrument; we, nevertheless, recognize that depending upon the particular case, a lack of such miscellaneous terms may not necessarily inhibit a judgment of specific performance. In the case sub judice, however, we are concerned with a transaction of considerable magnitude and as relates to such a transaction the time and place of closing and details concerning assumption of existing mortgages would appear to be essential, and such essential terms are lacking here. Cf. Rundel v. Gordon, 1927, 92 Fla. 1110, 111 So. 386; Lasseter v. Dauer, Fla.App.3d 1968, 211 So.2d 584. See also Hart v. *752 Freeman & Sons, Inc., Fla.App.3d 1969, 226 So.2d 708.
In Count II Nichols sought compensatory and punitive damages against Silco claiming that Silco's entry into a contract to purchase Nokomis Park from MoAmCo constituted an unjustifiable interference with an advantageous business relationship between Nichols and MoAmCo. In Symon v. J. Rolfe Davis, Inc., Fla.App. 4th 1971, 245 So.2d 278, the court stated that the elements of the tort of interference with a business relationship of others are:
"(1) the existence of a business relationship under which the plaintiff has legal rights, (2) an intentional and unjustified interference with that relationship by the defendant, and (3) damage to the plaintiff as a result of the breach of the business relationship. Cf., John B. Reid & Associates, Inc. v. Jimenez, Fla.App. 1965, 181 So.2d 575; Mead Corporation v. Mason, Fla.App. 1966, 191 So.2d 592." 245 So.2d at 280.
Count II failed to disclose sufficient ultimate facts properly to allege a cause of action on the tort of interference by Silco with any business relationship between Nichols and MoAmCo.
While Nichols' complaint did not sufficiently allege a cause of action for specific performance or for unjust interference with an advantageous business relationship, nevertheless, in Count I Nichols included a prayer for damages against MoAmCo. There are allegations within Nichols' complaint and its exhibits from which the court may determine there was a contract between Nichols and MoAmCo[4] and if so, to then determine the question of breach of contract and resultant damages. See Purcell v. Rothman, Fla.App.3d 1958, 99 So.2d 631; Lassiter v. Dauer, supra, and cases cited therein.
Accordingly, the trial court's order is affirmed insofar as it dismissed the appellant's claim for specific performance in Count I, and for interference with an advantageous business relationship in Count II, but is reversed insofar as it dismissed the appellant's claim in Count I against MoAmCo for damages for alleged breach of contract.
Remanded for further proceedings consistent with this opinion.
McNULTY, C.J., and BOARDMAN, J., concur.
NOTES
[1] Letter of December 21, 1973:

"It has been recalled that at the time you purchased the Riviera properties discussion occurred with respect to providing you with an opportunity to purchase the Nokomis Park if MoAmCo determined to sell it. No written assurance was ever given.
However, I have been requested to inform you that MoAmCo has determined to sell the Park and has negotiated a sale price and terms and conditions. A purchase agreement is now being prepared and it is expected that it will be executed by the end of the year.
The purchase price is $1,515,000.00. The first and second mortgages are to be assumed. Ernest money of $40,000 and additional cash of $365,000 at closing is to be paid. However, the aggregate cash of $405,000 is to be placed in escrow at the time of the execution of the purchase agreement.
If you are interested in meeting this offer, please so advise immediately upon receipt of this letter."
[2] Mailgram of December 28, 1973:

"I ACCEPT YOUR OFFER OF SALE OF THE NOKOMIS PARK ON THE TERMS SET FORTH IN YOUR LETTER TO ME DATED DECEMBER 21st 1973. ERNEST MONEY CHECK OF $40,000 IS IN THE MAIL TO YOU. CLOSING AT YOUR CONVENIENCE AFTER EXAMINATION OF TITLE."
Letter of December 28, 1973:
"Pursuant to your offer of December 21, 1973, received by me today in my telegraph acceptance hereof of today's date, I am enclosing my check in the sum of $40,000 ernest money and am prepared to escrow the $405,000, upon advise as to how you wish this to be done. I am ready to close at any time."
[3] Keyser v. Phillips Petroleum Co., Fla.App.2d 1973, 287 So.2d 364.
[4] We express no opinion as to whether there was a contract between Nichols and MoAmCo, this being a matter for determination by the trial court.