374 So.2d 1057 (1979)
Guillermo J. SOCARRAS, Etc., Appellant,
v.
CLAUGHTON HOTELS, INC., Appellee.
No. 78-999.
District Court of Appeal of Florida, Third District.
August 14, 1979.
Rehearing Denied September 24, 1979.
Taylor, Brion, Buker & Greene and Henry H. Taylor, Jr., Miami, for appellant.
Mershon, Sawyer, Johnston, Dunwody & Cole and A.J. O'Donnell, Jr., Miami, for appellee.
Before HUBBART and KEHOE, JJ., and EZELL, BOYCE F., Jr. (Ret.), Associate Judge.
EZELL, Associate Judge.
The issue presented to us for review is whether certain documents purporting to create a contract for the sale of real property were sufficient to satisfy the requirements *1058 of the statute of frauds. We hold that the documents in question were not sufficient to satisfy that statute. Accordingly, we affirm.
This action arose after a complex, multi-million dollar real estate transaction went awry. The appellant, acting in the capacity of a trustee for unnamed investors, initiated this suit seeking specific performance of an alleged agreement that purportedly obligated the appellee corporation to convey its interest in several acres of real property. After extensive discovery, the appellee moved for summary judgment on the grounds: (a) that the alleged contract was unenforceable under the statute of frauds,[1] and (b) that there was no enforceable agreement since the purported contract was too indefinite in its terms.
The trial court granted the motion for summary judgment and by separate order entered summary final judgment for the appellee. It ruled that the written documents constituting the alleged contract did not satisfy the statute of frauds. Further, that the parties never entered into an enforceable contract since there was no unequivocal acceptance by the appellant of the appellee's purported offer.
The material facts are not in dispute. Appellant Socarras contacted Edward N. Claughton, the president and controlling shareholder of appellee, Claughton Hotels, Inc., seeking to purchase the Silver Sands Motel situated on oceanfront acreage in Key Biscayne, Florida. Socarras intended to develop the property into a multi-unit condominium apartment building with the assistance of capital to be provided by potential investors. He proposed to purchase the motel and its 4.3 acres of oceanfront footage for the sum of three million dollars. Claughton responded that he might be interested in selling if the purchase price were right and that he was willing to discuss the proposal further.
The next day Socarras delivered to Claughton a RAMCO deposit receipt form appropriately completed and signed by Socarras. This completed form comprised the basic terms of his proposal to buy the motel at a purchase price of $3,000,000. Attached to this form, and incorporated by reference thereto, was an addendum containing several additional conditions to the sale and particularly providing further details regarding the proposed financing arrangements. The RAMCO form and its attachment were left with Claughton for his perusal and consideration.
A short time later the parties again met to discuss the contemplated sale. Claughton returned the RAMCO form on which he had made a number of handwritten notations materially varying the original offer submitted by Socarras. Included among the changes was a higher purchase price of $3,300,000. Negotiations continued in the hopes that a formal agreement could be reached and reduced to writing. At the conclusion of the negotiations, Claughton mentioned that before he would sign any contract he must first investigate the possible tax consequences of the sale.
At their next meeting, Socarras handed Claughton a retyped version of the RAMCO form containing essentially his original offer, including the $3,000,000 purchase price. After consulting with his tax advisor, Claughton again informed Socarras that he would not sign any contract until it could be thoroughly reviewed regarding its possible tax consequences. When Socarras responded that he needed something to show his financial backers that an agreement was imminent, Claughton obliged by drafting a handwritten note which read as follows:
"Mr. Bill Socarras,
Dear Bill,
I would like to sell the Silver Sands Oceanfront Motel with an area of approximately 4.3 acres on Key Biscayne under the following terms and conditions:
Price  $3,000,000.00
Terms:  $ 150,000 at closing about 90 days after contract with a $50,000.00 deposit with your attorneys; of which shall be a part of the sum at closing.

*1059 $ 720,000.00 payable on or about August 1, 1978; and
the balance in a purchase money mortgage payable over three years at 8 1/2% interest while 1st mtg. status and 10% interest while subordinated; payable in full or in part at any time after the first year without penalty; and may be subordinated to an institutional first mortgage
Sale includes personal property owned by the seller except for certain personal items such as paintings, wall coverings, boats and the like, except for the 2 duplexes.
This is an exclusive offer to sell net at this price for a period of time not to exceed Aug. 15, 1977.
Many thanks for your understanding.
 Sincerely,
 Claughton Hotels, Inc.
 by: E.N. Claughton, Jr.
 attest: Suzanne C. Matthews"
Claughton signed and delivered the handwritten note to Socarras and returned the retyped RAMCO form unsigned.
Three weeks later, after further extensive negotiations, the transaction fell through when Claughton learned that the sale would have very adverse tax consequences to his corporation. Although Socarras was given another opportunity to work out acceptable terms, when he returned with another RAMCO form containing essentially the same terms as originally proposed, Claughton refused to sign. After several subsequent fruitless meetings failed to produce any written agreement, the negotiations concluded without a sale.
Socarras then filed a complaint in the circuit court seeking specific performance of a contract that he alleged was created by virtue of Claughton's handwritten note and the unsigned RAMCO form. He contended that the parties entered into an enforceable contract at that time and that there was no necessity for any subsequent written agreement formalizing the conveyance. He maintained that the RAMCO form and the handwritten note were sufficient, when taken together, to satisfy the statute of frauds. The circuit court disagreed with him on this point.
To be an enforceable land sales contract, the statute of frauds[2] requires the contract to satisfy two threshold conditions. First, the contract must be embodied in a written memorandum signed by the party against whom enforcement is sought. Sill v. Ocala Jewelers, 210 So.2d 458 (Fla. 1st DCA 1968). Second, the written memorandum must disclose all of the essential terms of the sale and these terms may not be explained by resort to parol evidence. Rundel v. Gordon, 92 Fla. 110, 111 So. 386 (1927); Cohodas v. Russell, 289 So.2d 55 (Fla. 2d DCA 1974). In our view, the summary judgment entered below must be affirmed since neither of these two essential prerequisites were met.
Initially, we note that the appellant concedes that the RAMCO form was never signed by the appellee. Appellant's ingenuous effort to persuade the court that an enforceable agreement was created by the physical attachment of the unsigned RAMCO form to the signed handwritten note must fail. It is established law that in order for an unsigned writing to be used to supply the essential elements of an enforceable contract, there must be some reference to that unsigned writing in the signed writing. Meek v. Briggs, 80 Fla. 487, 86 So. 271 (1920). Nowhere in Claughton's handwritten note is there the slightest reference to the RAMCO form or any other document. Throughout the record, the handwritten note and the RAMCO form were separately discussed and treated by the parties. Even if the two documents were attached and discussed together, this would not be sufficient to constitute an enforceable contract *1060 where the writings were not connected by internal reference.
Further, the handwritten note is not enforceable by itself since it contains numerous unclear terms that could not be known or understood without recourse to inadmissible parole evidence. There is no definitive list of essential terms that must be present and certain to satisfy the statute of frauds. Rather, the essential terms will vary widely according to the nature and complexity of each transaction and will be evaluated on a case by case basis:
.....
"Where it is sought to enforce in equity a contract for the sale of land, it is essential that the terms of the contract shall be expressed with reasonable certainty, and what is reasonable in any case must depend upon the subject-matter of the agreement, the purpose for which it was entered into, the situation and relation of the parties, and the circumstances under which it was made."
.....
Rundel v. Gordon, supra at 111 So. 388-389.
In a situation such as the present case, where the alleged agreement involves a large and very complex real estate transaction, it is readily apparent that all of the essential terms of that transaction were not included in Claughton's handwritten note. An examination of the note reveals some of the more conspicuous omissions. For instance, it contains only the suggestion that the appellee "would like to sell" the Silver Sands Motel. The identity of the ultimate purchasers is not given and it is not clear as to how the deferred payment financing arrangement would work, or when the purchase money mortgage payments would begin. The note makes reference to personal property to be excepted from the contemplated sale, but there is no clear identification of the items that Claughton Hotels would retain. The note also makes mention of a possible future subordination of the purchase money mortgage to a new first mortgage, but none of the terms of this contemplated subordination were delineated.
In short, the handwritten note evidences only Claughton's willingness to negotiate a contract with potential purchasers who might be interested in the general terms that he outlined. The note did not incorporate all of the essential terms necessary to make an enforceable contract for the sale of the land. It reflected only the state of negotiations at that point, preliminary negotiations which never ripened into a formal agreement. Under these circumstances, the trial court was eminently correct in entering summary judgment for the appellee.
Affirmed.
NOTES
[1] Codified under § 725.01, Fla. Stat. (1977).
[2] § 725.01, Fla. Stat. (1977) provides in pertinent part that:

"No action shall be brought whereby to charge ... any person ... upon any contract for the sale of lands, ... unless the agreement or promise upon which such action shall be brought, or some note or memorandum thereof shall be in writing and signed by the party to be charged therewith... ."