[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
AUGUST 3, 2010
JOHN LEY
CLERK

_____

No. 09-11425

_____

D. C. Docket No. 08-14146-CV-JEM

JOHN C. BERKERY, SR.,

Plaintiff-Appellant,

versus

NEWTON C. PRATT,
CONNIE PRATT,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(August 3, 2010)

Before BIRCH, MARCUS and BALDOCK,[*] Circuit Judges.

_____

[*] Honorable Bobby R. Baldock, United States Circuit Judge for the Tenth Circuit, sitting by designation.

PER CURIAM:

John C. Berkery ("Berkery"), *pro se*, appeals the district court's order granting summary judgment in favor of Newton and Connie Pratt ("the Pratts"), *pro se*, in a diversity jurisdiction suit alleging breach of contract and fraud. On appeal, Berkery argues that a Letter of Intent ("LOI"), signed by all parties, constituted a binding contract for the sale of real property. We AFFIRM the district court's grant of summary judgment in favor of the Pratts.

## I. BACKGROUND

On 27 March 2008, Berkery approached the Pratts at their home in Jensen Beach, Florida ("the property") responding to a front-yard sign advertising sale of the property. R1-1 at 2. After a brief tour/discussion and offer/counter-offer, Berkery and the Pratts agreed to a sale price of $300,000. *Id.* at 2, Exh. A at 1.

On 31 March 2008, Berkery again met the Pratts at the property producing the LOI. *Id.* The LOI stated, *inter alia*, the following: ". . . the parties . . . hereby warrant and assert that they intend to be mutually and legally bound by the terms of this Letter of Intent in lieu of and pending the execution of a formal contract/Agreement of Sale." R1-1, Exh. A at 1. The LOI described the property, and set forth the sale price, the seller's warranties, the buyer's financing contingency, when the buyer's deposit would be due, and when the settlement of

2

the property would occur. *Id.* It did not include any language regarding occupation of the property after the sale nor allocation of closing costs. *See id.* All parties signed the LOI. *Id.* at 2.

Shortly after execution of the LOI, the Pratts' attorney sent Berkery an Agreement of Sale ("AOS") with a special addendum attached. *See* R1-1, Exh. C; R1-23 at 2-3. The AOS was a form "'As Is' Contract for Sale and Purchase," approved by the Florida Association of Realtors and the Florida Bar. *See Id.* The addendum (1) acknowledged that the property water well was not working, so the Pratts could opt to either fix the well or give Berkery a $2,500 credit at closing, (2) described a timeline and rent fee for the Pratts to remain in the property after closing, and (3) addressed the payment of certain closing costs. *See* R1-23 at 3; R1-1 at 3-4; R1-1 Exh. C at 1, 11. Soon after receiving the AOS, Berkery returned it to the Pratts, signed, but with changes made to the agreement's addendum. R1-1 Exh. C at 1-2. Berkery sought to clarify (1) that the Pratts were responsible for paying the full Stamp Tax, and (2) the terms under which the Pratts could stay in the property as renting tenants. *Id.* at 1.

On 17 April 2008, the Pratts wrote to Berkery to announce the termination of "any further negotiations . . . regarding the subject real property." R1-1 Exh. B. The Pratts explained that they sent the AOS to Berkery in good faith compliance

with the LOI and that Berkery's changes were unacceptable. *Id.*

Berkery filed suit in the United States District Court for the Southern District of Florida alleging breach of contract and fraud, and seeking both specific performance and damages. R1-1. The Pratts filed a motion to dismiss, which was converted into a motion for summary judgment by an assigned magistrate judge on 15 September 2008. R1-21. The magistrate judge gave the Pratts fourteen days to submit evidence and Berkery fourteen days thereafter to respond. *Id.* at 2. The Pratts had an additional seven days to respond to Berkery's submissions. *Id.*

The Pratts submitted an affidavit in support of their motion for summary judgment on 29 September 2008. R1-22. Berkery did not submit any evidence to defeat the Pratts' motion for summary judgment. The magistrate judge issued a report and recommendation on 6 October 2008, finding, *inter alia*, that the LOI did not hold itself out as a purchase contract, but rather contemplated the execution of a formal sale contract in the future. R1-23 at 2. The magistrate judge further found that Berkery failed to state a viable fraud claim. *Id.* at 9-11.

Berkery filed objections to the magistrate judge's report and recommendation. R1-25. Thereafter, the district court adopted the report and recommendation and granted the Pratts' motion to dismiss on 23 February 2009. R1-27 at 1-2.

4

On appeal, Berkery argues that the LOI was a binding contract and that the AOS was not a continued negotiation but was instead meant to reflect the terms of the LOI. Concerning summary judgment procedures, Berkery alleges that while it was not necessary for him to submit any evidence – because the Pratts did not submit evidence not already contained in the record – he nevertheless argues that he was not afforded a meaningful opportunity to respond to the Pratts' 29 September submission. Finally, Berkery argues that he adequately pled fraud.

## II. DISCUSSION

We review the district court's grant of summary judgment *de novo*, viewing the evidence in the light most favorable to the nonmoving party. *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1363 (11th Cir. 2007) (per curiam). Summary judgment is appropriate when "there is no genuine issue of material fact and . . . the moving party is entitled to judgment as a matter of law." *Id.* (quoting Fed. R. Civ. P. 56(c)). "*Pro se* pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed." *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998) (per curiam). As a federal court sitting in diversity, we must apply Florida law to this case. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 80, 58 S. Ct. 817, 823 (1938).

5

A. *Whether The LOI Was a Binding Real Estate Contract*

In Florida, "courts will recognize a contract so long as no essential terms remain open for consideration and negotiation." *W.R. Townsend Contracting, Inc. v. Jensen Civil Const., Inc.*, 728 So. 2d 297, 301 (Fla. 1st Dist. Ct. App. 1999). This means there must be a "meeting of the minds" on all essential terms of the contract. *De Vaux v. Westwood Baptist Church*, 953 So. 2d 677, 681 (Fla. 1st Dist. Ct. App. 2007). "The fact that other, non-essential terms remain open is not fatal" to a breach of contract claim. *W.R. Townsend*, 728 So. 2d at 302. In addition, "the law recognizes that parties can have an enforceable contract binding them to prepare and execute a subsequent agreement." *Plumbing Serv. Co. v. Progressive Plumbing, Inc.*, 952 So. 2d 1211, 1214 (Fla. 5th Dist. Ct. App. 2007).[1] In other words, the mere fact that the parties contemplate memorializing an agreement containing all essential terms in a formal document does not prevent their informal agreement from taking effect prior to that event. *See W.R. Townsend*, 728 So. 2d at 302.

What constitutes an "essential term" varies according to the nature and complexity of the transaction and must be evaluated on a case by case basis. *King*

---

[1] We note that the district court erred in its conclusion that "a statement of intent to contract in the future is not enforceable in Florida." R1-27 at 1 (citing *LaFarge North America, Inc. v. Matraco Colorado, Inc.*, No. 07-80112-CIV, 2008 WL 2277503 (S.D. Fla. 2008)). Indeed, such a contract is "well recognized." *W.R. Townsend*, 728 So. 2d at 302.

6

*v. Bray*, 867 So. 2d 1224, 1228 (Fla. 5th Dist. Ct. App. 2004). In a typical real estate transaction, examples of essential terms of the contract include the identification of all property, *Louis Sherry Assocs., Inc. v. Opatut*, 414 So. 2d 1148 (Fla. 3d Dist. Ct. App. 1982) (per curiam), and identification of all parties and financing terms, *David v. Richman*, 568 So. 2d 922, 924 (Fla. 1990). "[A] contract for the sale of realty, like other contracts, must [also] be supported by consideration." *Parker v. Weiss*, 404 So. 2d 820, 821 (Fla. 1st Dist. Ct. App. 1981) (per curiam). "The consideration which creates a valid contract for the sale of real property is the purchaser's promise to pay." *Peterson Homes, Inc. v. Johnson*, 691 So. 2d 563, 564 (Fla. 5th Dist. Ct. App. 1997) (citing *Parker*, 404 So. 2d at 821). Thus, no portion of the deposit needs to be paid at the signing of the agreement for there to be a valid contract. *Id.*

At issue in this case was whether the LOI contemplated all the essential terms of a real estate transaction. Notably, the LOI was silent as to possession of the property, allocation of certain closing costs, and issues concerning the property water supply. Regarding these issues specifically, Florida Courts of Appeal are in disagreement. *Compare Cohodas v. Russell*, 289 So. 2d 55, 57 (Fla. 2d Dist. Ct. App. 1974) (listing document stamps and other standard closing costs as "details determinable" rather than "essential elements to form a contract") *with Grover v.*

*Jacksonville Golfair, Inc.*, 914 So. 2d 995, 996 (Fla. 1st Dist. Ct. App. 2005) (per curiam) (including "allocation of closing costs" under "essential terms"). The Florida Supreme Court has listed examples of "essential elements" of a real estate contract as "matter of consideration, manner of payment, security for deferred payments, interest, dates when they shall become due, [and] acts to be done by either party." *Rundel v. Gordon*, 111 So. 386, 389 (Fla. 1927).

Applying Florida Supreme Court precedent to the specific facts at hand, we find that items essential in the aggregate to the real estate contract in this case include: (1) allocation of closing costs, (2) description of property possession or occupancy during and after the pending sale period, and (3) allocation of responsibility for necessary utility repairs. *See id.* Accordingly, we find that the LOI is not an enforceable real estate contract.

B. *Whether Not Allowing Berkery Time to Submit Evidence Was Harmless Error*

District courts must give nonmovants a meaningful opportunity to respond to motions for summary judgment. *Burns v. Gadsden State Cmty. Coll.*, 908 F.2d 1512, 1516 (11th Cir. 1990) (per curiam). We strictly enforce the ten day notice requirement in Fed. R. Civ. P. 56(c). *Id.* Specifically, the nonmovant must have ten days to respond to the evidence submitted by the moving party "before the court takes the summary judgment issue under advisement." *Id.* at 1517.

8

However, we have also applied a harmless error standard in cases where the record shows the parties were well aware of the summary judgment motion and the parties made all arguments and submitted all documents they would have presented had they received the notice to which they were entitled. *Prop. Mgmt. & Invs., Inc. v. Lewis*, 752 F.2d 599, 605 (11th Cir. 1985).

After the Pratts' motion to dismiss was converted to a motion for summary judgment on 15 September 2008, the magistrate judge gave the Pratts fourteen days to submit evidence, and Berkery fourteen days thereafter to respond. The Pratts submitted an affidavit in support of their motion for summary judgment on 29 September 2008, and the magistrate judge issued a report and recommendation on 6 October 2008. While this timeline did not allow Berkery an opportunity to respond to evidence submitted, Berkery concedes that he would not have submitted any additional evidence. Everything submitted by the Pratts was already in the record. Appellant's Initial Brief at 26. Because the Pratts did not submit additional evidence, this timeline error is harmless and is not grounds for remand. *Lewis*, 752 F.2d at 605.

C. *Whether Berkery Adequately Pled Fraud*

Berkery argues that he adequately pled fraud because his complaint included the "who, what, when, where, and how" of the alleged fraud. Appellant's Initial

Brief at 20. While Berkery admits that a fraud claim may merge into a breach of contract claim, he contends that the fraud took place after the Pratts already breached the contract, and therefore, stands alone as a separate cause of action. Essentially, Berkery argues that the Pratts honestly entered into the contract, but only after they found a "more favorable" buyer did they decide to breach the contract. *Id*.

To state a cause of action for fraud in Florida, the plaintiff must allege: (1) the defendant made a false representation of material fact, (2) the defendant knew that the representation was false, (3) the defendant made the representation for the purpose of inducing the plaintiff to act in reliance thereon, and (4) the plaintiff's injury was caused by justifiable reliance on the representation. *Babbit Elecs., Inc. v. Dynascan Corp.*, 38 F.3d 1161, 1176-77 (11th Cir. 1994) (per curiam).

Here, Berkery failed to plead fraud with particularity because his allegations were generic statements. For example, Berkery concluded that the Pratts "made a fraudulent utterance" but failed to state what that utterance was, when it was made, or how that utterance benefitted them. R1-1 at 6. The district court, however, did not dismiss this count for failure to state a claim. Even after the district court allowed Berkery's fraud claim to proceed to the summary judgment stage, Berkery

10

still failed to provide evidence detailing how the Pratts' alleged misrepresentation – their unwillingness to sell the property – benefitted them. Moreover, Berkery admits on appeal that the misrepresentation was not false when made, but only became false once a more favorable buyer was found. This type of fraud is interwoven with Berkery's breach of contract claim because the misrepresentation relates to the Pratts' non-performance of the contract and does not give rise to a separate cause of action. *See Amoco Oil Co. v. Gomez*, 379 F.3d 1266, 1272 n.18 (11th Cir. 2004) (stating that under Florida law, misrepresentations related to the breaching party's performance of the contract are interwoven with the breach of contract and do not give rise to an independent cause of action). We find that Berkery's fraud claim fails because he puts forth no argument distinct from those related to the Pratt's non-performance.

### III. CONCLUSION

Berkery appeals the district court's order granting summary judgment in favor of the Pratts in a suit alleging breach of contract and fraud. We conclude the district court did not err in granting summary judgment because: (1) the LOI was not an enforceable real estate contract; (2) the timeline not allowing Berkery to respond to evidence submitted by the Pratts before the magistrate judge's report is harmless error; and (3) Berkery's fraud claim fails because the alleged

11

misrepresentation on the part of the Pratts was interwoven with Berkery's breach of contract claim. Accordingly, we **AFFIRM** the district court's grant of summary judgment in favor of the Pratts.

**AFFIRMED.**