WARNER, J.
 

 Ge Lin appeals from an amended final judgment granting Ecclestone Signature Homes of Palm Beach specific performance and requiring Lin to close on a residential property. Lin contends that the contract violated the statute of frauds because the contract did not include the exact quantity of furniture in its terms. We conclude that the contract is enforceable and affirm.
 

 Ge Lin, the Buyer, executed a purchase agreement with Ecclestone, the Seller, to buy a pre-construction home in Port St. Lucie.
 
 [1]
 
 The contract provided that the home was to be completed and available for occupancy within two years. The home was to be a fully furnished and decorated home, to be built based on a floor plan attached to the agreement. The form agreement addendum referred to an attached Schedule “1” to the agreement as a list of furniture and furnishing; however, it is undisputed that schedule 1 was not actually attached. The total purchase price was $3,350,000 ($2,990,000 and $360,000 for the furniture/furnishing package). The Buyer paid $335,000 as a down payment. The agreement provided that after closing occurred, the Seller would lease the house back from the Buyer to use it as a model home for a period of 18 months at a rent of $22,000 per month. Subsequent to the signing of the contract, the Seller contracted with a decorator and selected the furniture for the home.
 

 By February 2007, the house was substantially completed, though not yet furnished. The Seller sent the Buyer a certified letter scheduling the closing for March 30, 2007. At a walk-through that March, the Buyer indicated he wanted certain things changed or added and those
 
 *269
 
 items were included in a letter sent by the Buyer. In the - letter, the Buyer complained that he had not received sufficient information about- the furniture and its quality. The next day, he met with the Seller’s representative at the interior decorator’s warehouse. The decorator made a presentation of most of the furniture and furnishings that she had ordered for the home. While the Buyer may have had some reservations about the
 
 quality
 
 of some of the items, he never objected to the quantity of items ordered for the home.
 

 The Seller thereafter scheduled three closings for the home on March 30, 2007, May 2, 2007, and May 25, 2007, prior to the expiration of the two-year deadline on June 18, 2007. The first closing on March 30, 2007, was postponed because the Buyer wanted a privacy wall constructed around a front window. The second closing on May 2 was postponed because although the Buyer showed up he was not prepared to close, as he was still working on obtaining financing. The third closing was noticed for May 25 and also did not occur. The house was still unfurnished at this time. Final date of performance of the contract on June 18, 2007, passed without a closing. At the time the furniture had not been installed in the home, although it was available in a warehouse. The Seller finally moved it into the home in November 2007.
 

 In July 2007, the Seller filed suit for specific performance of the contract, breach of contract, and declaratory judgment. The Buyer answered, filed affirmative defenses, and raised a counterclaim for declaratory relief, asserting that the agreement was unenforceable and that the Seller had breached the agreement. He sought return of his deposit. At trial on February 5, 2009, the Buyer took the position that because the furniture was not in the house on the date set for closing, the Seller had breached.
 

 The Buyer also contended that there was no enforceable contract because the parties had not put the furniture and furnishing package in writing, violating the statute of frauds, section 672.201, Florida Statutes, which required that the sale of property above $500 be in writing to be enforceable. The Seller claimed that because the furniture was ordered and in a warehouse, the Seller was ready, willing and able to install it, thus the Seller did not breach. Further, the Seller contended that because it was going to lease back the home as a model the fact that the furniture was not yet installed would not have materially affected the Buyer.
 

 The trial court entered Final Judgment granting specific performance to the Seller finding' that the Buyer had breached the contract. The court specifically rejected the Buyer’s contention that the Seller was not in a position to furnish the residence by the two-year deadline, finding that the Seller had a long-standing relationship with its decorator such that the furniture would have been delivered on time, if necessary. The court also found that although the parties had not agreed to a specific listing of the furniture, from the negotiations the parties agreed that the type and quality would be the same as in two other model homes which the Buyer saw prior to signing the contract.
 

 The court entered an amended final judgment after considering the Buyer’s motion for rehearing. The -court found that the omission of Schedule 1 (the furniture/furnishing package) was a latent ambiguity and that parol evidence was admissible to establish the specific items of furniture/furnishings package to be installed in the home. This included agreements as to the type and quality of furnishings as well as the fact that the Seller
 
 *270
 
 had sole discretion in-its-, selection of furnishings, which the documents revealed would be similar to two existing and furnished model homes. The Buyer now appeals from that amended final judgment.
 

 The Buyer’s primary contention on appeal remains what he argued in the trial court: the contract violates the statute of frauds contained in section 672.201, and oral modifications of the contract would be prohibited by this section.
 
 [2]
 
 Section 672.201 provides:
 

 (1) Except as otherwise provided in this section a
 
 contract for the sale of goods
 
 for the price of $500 or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by his or her authorized agent or broker. A writing is not insufficient because it omits or incorrectly states a term agreed upon but the contract is not enforceable under this paragraph beyond the quantity of goods shown in such writing.
 

 (emphasis supplied).
 

 Although both the parties and the trial court analyzed this case based upon the application of the statute of frauds for a sale of goods, section 672.201(1), the contract was for the sale of furnished real estate, not the sale of goods. As the trial court found, the provision of a furnished home was an integral element of the sale of the property. It did not constitute a separate contract. We must look to the predominant nature of the transaction in determining whether to apply the Uniform Commercial Code’s Article 2,. regarding the sale of goods.
 
 See BMC Indus., Inc. v. Barth Indus., Inc.,
 
 160 F.3d 1322, 1330 (11th Cir.1998)(citing
 
 United States Fid. & Guar. Co. v. N. Am. Steel Corp.,
 
 335 So.2d 18, 21 (Fla. 2d DCA 1976)).
 

 Concluding that the predominant purpose of the contract was the sale of real estate, not goods, we apply the statute of frauds contained in section 725.01, Florida Statutes. Similar to section 672.201(1), section 725.01 requires that a contract for sale of real estate be in writing and signed by the party to be charged. “There is no definitive list of essential terms that must be present and certain to satisfy the statute of frauds. Rather, the essential terms will vary widely according to the nature and complexity of each transaction and will be evaluated on a case by case basis.”
 
 Socarras v. Claughton Hotels, Inc.,
 
 374 So.2d 1057, 1060 (Fla. 3d DCA 1979).
 
 Socarras
 
 cites to
 
 Rundel v. Gordon,
 
 92 Fla. 1110, 111 So. 386, 388-89 (1927), which explains,
 

 Where it is sought to enforce in equity a contract for the sale of land, it is essential that the terms of the contract shall be expressed with reasonable certainty, and what is reasonable in any case must depend upon the subject-matter of the agreement, the purpose for which it was entered into, the situation and relation of the parties, and the circumstances under which it was made.
 

 In this case, the trial court used that reasoning to conclude that the contractual terms were sufficient and enforceable..
 

 The court found that the Buyer was purchasing the residential real property as an investment, and the Seller would lease back the property after purchase to use as a model home. An addendum to the con
 
 *271
 
 tract provided that the home was to be fully furnished based upon an attached floor plan. The floor plan included the layout of furniture. Prior to execution of the contract, the Buyer had toured two other models, including the Campanile model home, and was aware of the amount, type and quality of those furnishings.
 

 As the court noted, the form contract executed was for purchasing an already constructed model, whereas this home was still to be constructed and furniture was yet to be purchased. The form contract provided for furnishings in accordance with “Schedule 1,” but no such schedule was attached. Instead, a layout of furniture was attached to the contract and other documents stated the price of the furnishings at $860,000. At the time of closing a walk-through would occur, and anything missing from, the Schedule 1 list would be noted. The Seller would have a reasonable time after closing to substitute other furniture of like quality. Failure to correct the items on the punch list (which would include missing furniture) prior to closing would not be a ground to postpone the closing.
 

 In preparation for closing, Ecclestone representatives conducted a walkthrough with the Buyer, who expressed reservations regarding some of the finishing. In addition, because the furniture was yet to be installed, the interior decorator met with the Buyer and showed him all of the furniture and furnishings which had already been ordered for the model.
 

 The court concluded that although Schedule 1, which listed every item of furniture, was not attached to the contract:
 

 the parties agreed that the furniture and furnishings would have a specific value, $360,000, and it would be of a specific type and quality, the same type and quality of furnishings used by Eccle-stone in the two model homes Lin saw prior to signing the contract, Campanile II and Casa Roma [both of which were specifically referred to in the addenda to the contract]. Thus, there was a sufficient benchmark to determine whether Ecclestone abided by its promise to provide a “fully furnished” model home, and Lin’s promise to pay for a “fully furnished” model home. The contract was not illusory, and it is enforceable.
 

 Essentially, the court concluded that the failure to attach Schedule 1 was not fatal to the enforcement of the contract. The court gleaned from other portions of the contract that the parties contracted for the Seller to supply $360,000 of furnishings in accordance with the layout of the Casa Campanile model and of similar quality and quantity. Considering the entire circumstances of the case, the relation of the parties, and the circumstances under which the contract was made, we agree with the trial court that'the provision of a fully furnished home with $360,000 in furnishings set forth an essential term of the contract with reasonable certainty. Competent substantial evidence supports its determination. This contract met the requirements of section 725.01, and was entitled to be enforced by a judgment of specific performance.
 

 We affirm without further elaboration on the remaining issues raised by the Buyer, as most are related to his contention that the contract could not be enforced because of the failure to include the listing of furnishings, an argument we have now rejected. He also contends that the Seller breached the contract first by failing to have the furniture in place by the date of closing, but we agree with the trial court in its conclusion that the Buyer first breached the contract by failing to have funds available to close. The Buyer never mentioned the failure to have the furniture
 
 *272
 
 actually delivered to the home as a reason that he did not attend the closing.
 

 For the foregoing reasons, we affirm the judgment of the trial court.
 

 STEVENSON and TAYLOR, JJ., concur.
 

 [1]
 

 . The Seller signed it on June 18, 2005, and the property was to be completed in two years, that is, by June 18, 2007.
 

 [2]
 

 . Even if we were to decide this case under Section 672.201, we would conclude that the statement of the price of the furniture, together with the references to the model homes and the layout of furniture attached to the contract constituted a sufficient statement of "quantity of goods” to satisfy the statute.