952 So.2d 1247 (2007)
Robin TERMAFOROOSH, Appellant,
v.
John WASH and Deen Wash, Appellees.
No. 5D06-1773.
District Court of Appeal of Florida, Fifth District.
April 5, 2007.
Walter A. Ketcham, Jr., and Ramon Vazquez of Grower, Ketcham, Rutherford, Bronson, Eide & Telan, P.A., Maitland, for Appellant.
David J. Kohs, of Pohl & Short, P.A., Winter Park, for Appellee.
PLEUS, C.J.
Robin Termaforoosh ("buyer") appeals a final partial summary judgment finding that he breached a contract for sale of commercial property and awarding John and Deen Wash ("sellers") the buyer's $10,000 deposit. We have jurisdiction because the judgment grants to the sellers the right to immediate possession of the $10,000 deposit. Fla. R.App. P. 9.130(a)(3)(C)(ii). Because a material issue of fact exists as to whether the buyer obtained an "appraisal," as required by the contract, we reverse.

*1248 Facts
The buyer sued the sellers for return of his $10,000 deposit on a contract for sale and purchase of commercial real property. His claim was based upon the following clause in an addendum to the contract:
6. It is understood by both parties that the only remaining contingency is the appraisal of said property. Therefore, both parties agree that the appraisal must be equal to or greater than the agreed upon sales price or the buyer may cancel the contract and have the full amount of the $10,000.00 deposit returned to him.
The buyer alleged that he applied for a loan on the property at Wachovia Bank. During the application process, Wachovia appraised the property value at $600,000, which was less than the agreed upon selling price of $640,000. As evidence of the appraisal, the buyer attached a letter from Wachovia Bank. It stated, in pertinent part:
Rob,
Per our conversation, the property located at 370 Blue Heron Drive came in with a value of $600,000. This value was based on the following comps.
  2527 Aloma Ave
  1490 W. Fairbanks Ave
  1412 Trovillian Ave
  1788 Fairbanks Ave
  212 E Smith Street
Please call me if you have any questions.
Sincerely,
/s
Brian Wickham
Wachovia Small Business Banker
Although the buyer cancelled the contract and requested the return of his deposit, the sellers refused.
The sellers filed an answer denying that the letter was an appraisal. They also included counterclaims for specific performance and damages. The sellers later filed a motion for summary judgment alleging that the buyer breached the contract by failing to close on the property. Regarding the appraisal issue, the sellers argued that the Wachovia letter was not a "qualified appraisal."
Shortly before the hearing on the motion for summary judgment, Brian Wickham was deposed. He testified that he was a small business banker with Wachovia Bank. The buyer attempted to obtain a loan from him to buy the property in question. After the buyer's application was accepted and the buyer agreed to the loan terms, Wachovia began its due diligence process, which included getting an appraisal of the property. When asked to explain his use of the term "appraisal," Wickham stated:
We've basically got two major ways that we come up with a value. We do at that point what we call a Type Seven appraisal, which is an internal evaluation. Internal meaning for bank use only. How that process works is we have a commercial appraiser locally that takes pictures and pulls comps, comparables. He acts strictly in a consultative role, sends all the information to our inhouse appraisal group up in Charlotte, who then look at what he's provided and determine a value, adjust accordingly and come up with a value.
The in-house appraisal group in Charlotte looked at comparables, square footage, price per square footage and then came up with a value. The bank would loan the customer 80% of that value. The Type Seven Appraisal in this case yielded a valuation of $600,000, which was less than the contract price of $640,000. According to Wickham, other banks similarly situated to Wachovia have a Type Seven Appraisal *1249 process to determine how much money they will loan on a property.
If the buyer was not satisfied with the "Type Seven Appraisal," he could pay for a "traditional appraisal, which is where they do a cost approach, an income approach and a market approach, which is what you normally think of in a commercial appraisal. . . ." That would cost $2,700 to $3,500.
On cross-examination, Wickham acknowledged that the local appraiser did nothing more than take pictures of the property, locate comparable properties and send that information to the in-house team in Charlotte. Wickham did not know if the in-house people were certified real property appraisers. Wickham reiterated that the Type Seven Appraisal was an "internal evaluation for bank purpose only."
At the hearing on the motion for summary judgment, both parties cited to Wickham's deposition testimony to support their positions. The sellers argued that Wickham's letter was not an appraisal, Wickham's testimony was not competent to establish the existence of an appraisal, and the Type Seven Appraisal was not a real appraisal. The buyer argued that it was sufficient. The trial court reserved ruling to review the deposition. The court later granted partial final summary judgment finding that the buyer had breached the contract and was therefore precluded from pursuing his claim for return of the deposit.

Analysis
Generally, the party moving for summary judgment must prove conclusively the nonexistence of any genuine issue of material fact. Lawrence v. Pep Boys Manny Moe & Jack, Inc., 842 So.2d 303, 304-05 (Fla. 5th DCA 2003). The trial court, and the appellate court on review, "must view the evidence contained in the record, including any properly asserted supporting affidavits, in the light most favorable to the non-moving party, and if the slightest doubt exists, the summary judgment must be reversed." Id. at 305.
The construction of a contract term is ordinarily a question of law so long as the terms used are "unequivocal, clear, undisputed and not subject to conflicting inferences." Campaniello v. Amici P'ship, 832 So.2d 870, 872 (Fla. 4th DCA 2002). However, if the terms are disputed and rationally susceptible to more than one construction, an issue of fact is presented, precluding summary judgment. Id.
The buyer asserts that the term "appraisal" means "[t]he determination of what constitutes a fair price; valuation, estimation of worth. The report of such determination." Black's Law Dictionary, 96 (7th ed.1999). The sellers argue that such a broad definition would permit virtually anyone to assign a value to a property, regardless of their qualifications or methods. As the sellers note, "[w]ords should be given their natural meaning or the meaning most commonly understood in relation to the subject matter and circumstances, and reasonable construction is preferred to one that is unreasonable." Thompson v. C.H.B., Inc., 454 So.2d 55, 57 (Fla. 4th DCA 1984). Consequently, they offer the following definition from an earlier edition of Black's: "A valuation or an estimation of value of property by disinterested persons of suitable qualifications. The process of ascertaining a value of an asset or liability that involves expert opinion rather than explicit market transactions." Black's Law Dictionary, 100 (5th ed.1990); see also The American Heritage Dictionary of the English Language (4th ed.2000), available at http://www.bartleby.com/61/23/A0382300.html ("1. The act or an instance of appraising. 2. An expert or official valuation, as for taxation."); Merriam-Webster *1250 Online Dictionary, available at http://m-w.com/dictionary/ appraisal ("an act or instance of appraising; especially: a valuation of property by the estimate of an authorized person."). All of these definitions suggest a common element, which is that the valuation of property be made by an expert or other qualified person.
We agree with the sellers that in the context of a commercial real estate contract, the most commonly understood interpretation of the term "appraisal" would include a valuation by a person with some amount of expertise or qualifications, as suggested by the above definitions. However, even under these definitions, the evidence raises an inference that the Wachovia Type Seven Appraisal was done by experts or otherwise qualified people. Wickham testified that the appraisal was (1) performed by Wachovia's in-house appraisal team in Charlotte, North Carolina, (2) relied upon by Wachovia and other similarly situated banks to determine how much money to lend on a commercial property; and (3) relied upon by Wachovia to offer to lend the buyer in this case 80% of $600,000. Whether this evidence is ultimately sufficient to constitute an appraisal under the contract is a question for the trier of fact to resolve.
Alternatively, the sellers invite us to apply the statutory definition of "appraisal," which is the valuation of property by "certified or licensed appraisers." § 475.611(1)(a), Fla. Stat. (2005). The problem with this definition is that the addendum does not specify a "certified" appraisal, "licensed" appraisal or any other type of appraisal. Elsewhere in the contract, the parties agreed that the buyer would obtain a "certified survey of the Property from a registered surveyor." If the sellers wanted a certified appraisal, they should have so specified.
Accordingly, we reverse the final partial summary judgment and remand the case for a trial on the merits.

Appellate Attorney's Fees and Costs
Both parties filed motions for appellate costs and attorney's fees pursuant to a prevailing party clause in the contract. Based on our resolution of this appeal, we deny the sellers' motion and award the buyer appellate attorney's fees and costs, conditioned upon ultimately prevailing below. See, e.g., Wilson v. Southern Repair Servs., Inc., 812 So.2d 445 (Fla. 5th DCA 2001).
REVERSED AND REMANDED.
THOMPSON and ORFINGER, JJ., concur.