990 So.2d 525 (2008)
DUCK DOG, L.C. and Harrison, Hendrickson & Kirkland, P.A., Appellants,
v.
BROWNSTAR PROPERTIES, LLC, Appellee.
No. 2D07-1834.
District Court of Appeal of Florida, Second District.
February 15, 2008.
*526 Monterey Campbell and Kristie Hatcher-Bolin of GrayRobinson, P.A., Lakeland, and John P. Harllee, III of Harllee & Bald, P.A., Bradenton, for Appellant Duck Dog, L.C.
No Appearance for Appellant, Harrison, Hendrickson & Kirkland, P.A.
Marion Hale of Johnson, Pope, Bokor, Ruppel & Burns, LLP, Clearwater, for Appellee.
CASANUEVA, Judge.
Duck Dog, L.C. appeals a final summary judgment entered in favor of Brownstar Properties, LLC based on the trial court's conclusion that the contract between the parties was unambiguous and that Duck Dog's refusal to close on the sale breached the contract. Consequently, the trial court ordered that Duck Dog forfeit its contractual deposit of $175,000. We reverse.

FACTS
Brownstar owned real property that formed part of the Heritage Community Development District. In October 2004, and pursuant to the statutory authority of sections 190.021-.022, Florida Statutes (2004), the District levied a special assessment on its property owners totaling $25,000,000 for infrastructure improvements. The portion of this amount assessed to the parcel belonging to Brownstar amounted to $1,943,122. Pursuant to section 190.022(2), in August 2005, the District decided to allow owners to pay this assessment in no more than thirty annual installments. By law, the special assessment constitutes a lien on the real property.
In March 2006, Brownstar and Duck Dog executed a contract for sale of this property to Duck Dog. The sales price was $6,325,000. Duck Dog refused to close on the sale after the parties disagreed on who *527 should be responsible to pay the $1.9 million special assessment. Section 6.00 of their contract, titled "Taxes and Prorations," contains the following language.
At the closing, the taxes and CDD [Community Development District] assessments on the Property shall be prorated between the parties on the basis of the taxes paid for the most recent year that has been assessed and billed. If the actual taxes for the year of Closing are not determinable at the Closing Date, then the parties agree to re-prorate taxes promptly upon issuance of the tax bill for the year of Closing. Special assessment liens certified as of Closing shall be paid by the Seller. Pending liens shall be assumed by the Buyer provided, however, that where the improvement has been substantially completed as of the Closing, such pending lien shall be treated as a certified lien and shall be paid by the Seller. Private charge assessments pursuant to the Master Declaration of Covenants, Conditions and Restrictions for Heritage Harbourage Market Place, shall also be prorated based upon the parties respective periods of Ownership.
Because Duck Dog refused to close, Brownstar filed a complaint for declaratory judgment, rescission, and liquidated damages of Duck Dog's deposit of $175,000. Brownstar moved for summary judgment based on this section of the contract as well as several other contractual provisions. Section 3.00, pertaining to title and title insurance, provides that the title insurance commitment shall show fee simple title subject to certain permitted exceptions including "CDD assessments and Owner Association fees for the current year and subsequent years[.]" Additionally, section 9.00(f), pertaining to Brownstar's warranties, provides that at the time of closing the property will be free and clear of all liens "except for ad valorem taxes for the year of Closing, CDD Assessments and Owner Association Assessments not yet due and payable[.]"
In its order granting Brownstar summary judgment, the trial court found that the sales contract stated with no uncertainty that the buyer takes fee simple title subject to certain enumerated restrictions, which included CDD assessments. The trial court noted:
The parties agree that a $1.9 million CDD assessment existed at the time of the scheduled closing. The CDD assessment is mentioned no fewer than three times in connection with the warranties of title; no ambiguity in the contract exists by virtue of the brief mention of undefined `special assessments' at only one place and which are to be borne by the seller. To the extent there is any ambiguity (and the Court finds that there is none), the direct reference to CDD assessments made it clear that the buyer took title subject to that debt.
We agree with the trial court that the term "special assessment" is undefined. In fact, the contract does not contain a section defining important terms in the contract. We cannot agree, however, that there is no ambiguity in the contract or that the intent of the parties is that Duck Dog bears the liability of paying the special assessment. We conclude that it was error for the court to enter summary judgment in favor of Brownstar, but not because we disagree, although we do, with the trial court's finding of no ambiguity in the contract. This record shows that there was no meeting of the minds.

ANALYSIS
Case law provides a number of principles for construing the language of a contract. "The construction of a contract term is ordinarily a question of law so long *528 as the terms used are `unequivocal, clear, undisputed and not subject to conflicting inferences.'" Termaforoosh v. Wash, 952 So.2d 1247, 1249 (Fla. 5th DCA 2007) (quoting Campaniello v. Amici P'ship, 832 So.2d 870, 872 (Fla. 4th DCA 2002)). The provisions of a contract must be construed "in conjunction with one another so as to give reasonable meaning and effect to all of the provisions." Aucilla Area Solid Waste Admin. v. Madison County, 890 So.2d 415, 416-17 (Fla. 1st DCA 2004).
We first examine the terms in section 6.00 which seek to identify the financial responsibility for payment of certain described liens. This section names the following types of liens: special assessment lien, special assessment lien certified as of closing, pending lien, and certified lien. As previously noted, the contract does not define any of these terms and there is no provision identifying the manner in which or by whom a lien, of whatever type, becomes certified.
The creation of a lien upon real property is a matter of substantive law. See Hott Interiors, Inc. v. Fostock, 721 So.2d 1236, 1239 (Fla. 4th DCA 1998). Chapter 190 came into being in 1980.[1] In 1999, the legislature amended it to add subsection (9) to section 190.021, which provides in part that special assessments "shall constitute a lien on the property against which assessed from the date of imposition thereof until paid, coequal with the lien of state, county, municipal, and school board taxes." Ch. 99-378, § 40, at 3785, Laws of Fla. It is like a tax and it is not like a tax:
A special assessment is like a tax in that it is an enforced contribution from the property owner, it may possess other points of similarity to a tax but it is inherently different and governed by entirely different principles. It is imposed upon the theory that that portion of the community which is required to bear it receives some special or peculiar benefit in the enhancement of value of the property against which it is imposed as a result of the improvement made with the proceeds of the special assessment. It is limited to the property benefited, is not governed by uniformity and may be determined legislatively or judicially.
City of Boca Raton v. State, 595 So.2d 25, 29 (Fla.1992) (quoting Klemm v. Davenport, 100 Fla. 627, 129 So. 904, 907-08 (1930)). Ultimately, the special assessment is collected by the tax assessor or in accordance with other collection measures provided by law. § 190.021(9).
The CDD assessment at issue here existed at the time the contract was executed. Thus, by operation of law, a lien on the property also existed at the same moment. Section 6.00 of the contract provides that "Special assessment liens"and there is but one here, of approximately $1.9 million"certified as of Closing" shall be paid by Brownstar. Unfortunately, the contract is silent as to what constitutes a "certified" special assessment or who certifies one. Absent contractual language defining "certified," and using the conventional meaning of "to attest, especially authoritatively or formally,"[2] the language of section 6.00 suggests a conclusion that Brownstar is responsible for the full and outstanding lien of approximately $1.9 million. *529 However, the lien is not collected in one payment. It is due in annual installments, spread out over a term of thirty years. Thus, it is also a reasonable interpretation of the contract that Brownstar would be responsible for that annual portion due at the time of closing, and only that portion would constitute a certified lien. However, this interpretation is not fully supported by other language in the section dealing with pending liens, which, in circumstances of substantial completion of improvements, are the responsibility of Brownstar.
The parties argued that the contract was clear and unambiguous and supported their own interpretation, and the trial court found that the contract was clear and unambiguous in deciding in Brownstar's favor, but we do not share their conclusions. What is clear to us is that each party believed the other bore the responsibility for payment of the $1.9 million assessment. When it came time for closing and the disagreement came to light, each party refused to compromise so the sale could be closed. What is further clear to us is that responsibility for payment of the $1.9 million assessment, which amounts to slightly more than 30 percent of the sales price, is an essential term of the contract. Because each party believed that the other should pay this assessment, there was no "meeting of the minds" on this material contractual provision. "Without a meeting of the minds of the parties on an essential element there can be no enforceable contract." Goff v. Indian Lake Estates, Inc., 178 So.2d 910, 912 (Fla. 2d DCA 1965). Mutual assent to the financing arrangement of a real estate transaction has been found to be an essential term. Nichols v. MoAmCo Corp., 311 So.2d 750, 751 (Fla. 2d DCA 1975) ("[W]e are concerned with a transaction of considerable magnitude and as relates to such a transaction ... details concerning assumption of existing mortgages would appear to be essential[.]"); see also Eichhorst v. Mandalay Shores Coop. Hous. Ass'n, 477 So.2d 25 (Fla. 2d DCA 1985) (reversing a judgment of specific enforcement of a real estate sales contract because the contract failed to provide for the method of financing and how the existing mortgage would be satisfied). Payment of a substantial lien, as here, is analogous to assumption of existing mortgages and we conclude it is likewise an essential term.
Without a meeting of the minds on this clearly essential term of the sales contract, the trial court erred in finding that there was an enforceable contract and that Duck Dog's refusal to close and be responsible for the $1.9 million assessment was a breach of that contract. Because there was no enforceable contract, Duck Dog's deposit should not have been forfeited for its refusal to close.
Accordingly, we reverse the summary judgment in favor of Duck Dog and remand for further proceedings.
SILBERMAN and VILLANTI, JJ., Concur.
NOTES
[1] An excellent discussion of chapter 190 is found in Trout Creek Properties, LLC v. Akerman, Senterfitt & Eidson, P.A., 294 F.Supp.2d 1280, 1285-86 (M.D.Fla.2003).
[2] Webster's 3d New International Dictionary (Unabridged) 367 (3d ed.1986). No one here disputes that the board of directors of the District lacked authority to impose or improperly imposed the special assessment of $25,000,000 or that it was in existence at the time the parties entered into their contract for sale of this property.